**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELAINE MASON, on behalf of herself, and all others similarly situated,<br>　　　Plaintiff,<br><br>v.<br><br>M3 FINANCIAL SERVICES, INC., an Illinois corporation,<br>　　　Defendant. | Case No.: 15-cv-4194<br><br><br>Honorable Andrea R. Wood<br><br>Honorable Susan E. Cox, Magistrate Judge |

**UNOPPOSED MOTION AND MEMORANDUM OF LAW SUPPORTING MOTION**
**FOR PRELIMINARY APPROVAL**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

III.  THE SETTLEMENT ........................................................................................... 4

    A.   The Definition of the Class ("Settlement Class") ................................................ 4

    B.   Settlement Fund .................................................................................................. 4

    C.   Prospective Relief .............................................................................................. 5

    D.   Monetary Relief ................................................................................................. 5

    E.   Notice to the Class ............................................................................................. 5

    F.   The Claims Process ........................................................................................... 7

    G.   Opportunity to Opt Out and Object .................................................................... 8

    H.   Scope of the Release .......................................................................................... 8

IV.  The COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS .............. 8

V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............ 12

    A.   The Amount Recovered Relative to the Strength of the Case Favors Approval. .............. 13

    B.   The Length, Complexity, and Expense of Further Litigation Favor Approval. ................ 14

    C.   The Opinion of Competent Counsel Favors Preliminary Approval. ................................ 14

    D.   The Stage of Litigation and State of Discovery Favor Preliminary Approval. ................. 14

VI.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ...................... 15

VII. CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,

521 U.S. 591 (1997) ................................................................................................ 8

*Birchmeier v. Caribbean Cruise Line, Inc.*,

302 F.R.D. 240 (N.D. Ill. 2014) ................................................................... 9, 10, 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,

131 S. Ct. 2179 (2011) .......................................................................................... 11

*Eubank v. Pella Corp.*,

753 F.3d 718 (7th Cir. 2014) ................................................................................ 12

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,

270 F.R.D. 330 (N.D. Ill. 2010) ....................................................... 10, 12, 13, 14

*In re Capital One Tel. Consumer Prot. Act Litig.*,

80 F.Supp.3d 781 (N.D. Ill. 2015) ....................................................................... 13

*Isby v. Bayh*,

75 F.3d 1191 (7th Cir. 1996) .......................................................................... 12, 14

*Messner v. Northshore Univ. Health Sys.*,

669 F.3d 802  (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) ............................. 11

*Reynolds v. Beneficial Nat. Bank*,

288 F.3d 277 (7th Cir. 2002) ................................................................................ 13

*Schulte v. Fifth Third Bank*,

805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................... 14

*Suchanek v. Sturm Foods, Inc.*,

764 F.3d 750 (7th Cir. 2014) ............................................................................ 9, 10

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,

463 F.3d 646 (7th Cir. 2006) ..................................................................... 12, 13, 15

*Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541 (2011) ............................................................................................ 9

**Rules**

Fed. R. Civ. P. 23(a)(1) ................................................................................................... 9

Fed. R. Civ. P. 23(a)(2) ................................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 10

Fed. R. Civ. P 23(a)(4) .................................................................................................. 10

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 15

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii) ............................................................................. 15

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 12

Fed. R. Civ. P. 23(g)(1)(B) ........................................................................................... 12

## I.    INTRODUCTION

Plaintiff Elaine Mason ("Plaintiff") moves for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation"), which is unopposed by Defendant M3 Financial Services, Inc. ("M3" or "Defendant"). M3 is a debt collector specializing in healthcare collections which Plaintiff alleges resulted in violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. This Settlement delivers a powerful combination of injunctive and monetary relief in resolving claims that Defendant violated the TPCA. The terms[1] of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement") attached as Exhibit 1 to the Declaration of Ronald A. Marron ("Marron Decl."). This Settlement affords substantial relief and this Court can appropriately grant Plaintiff's Unopposed Motion for Preliminary Approval.

The road to settlement began two years ago while the Parties engaged in heavy class discovery. Upon receipt of Defendant's call logs (which Plaintiff had to subpoena from Defendant's dialing vendor), Plaintiff retained an expert to analyze Defendant's call logs. Plaintiff's expert identified that of the records initially produced, Defendant placed 1,144,782 total calls (landline and cellphone calls to debtors and non-debtors) using Global Connect, of which approximately 53% were calls placed to cellphones. After substantial discussion, the Parties participated in a full-day mediation with the Honorable Morton I. Denlow (Ret.) of JAMS (Chicago) – and only after many more months of continued arm's-length negotiations and extensive confirmatory discovery did the Parties arrive at the Settlement now before the Court.

The Settlement represents a victory for consumers in terms monetary relief. And, the Settlement provides meaningful prospective relief requiring M3 to block automatic dialing of cellular telephone numbers and use of prerecorded voice messages to cellular telephone numbers

---

[1] Defined terms in this memorandum have the meaning ascribed to those terms in the Agreement.

1

and to systemically code borrower's consent. As to monetary relief, M3 has agreed to create a $600,000 Settlement Fund, from which Class Members who submit a simple claim form shall receive a cash payment. In exchange, Class Members will release their claims against M3 per the Settlement. While Plaintiff is confident of a favorable determination on the merits, she has determined that the Settlement provides significant benefits to, and is in the best interests of, the Settlement Class. Plaintiff also believes that the Settlement is appropriate in light of the expense and time required to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting claims like those asserted by Plaintiff. And, as evidenced by the Agreement, Defendant believes it has substantial and meritorious defenses to Plaintiff's claims, but has determined that it is desirable to settle the Litigation.

In light of the substantial relief the Settlement provides, Plaintiff respectfully requests that this Court (1) certify the Settlement Class; (2) appoint Plaintiff Mason as Class Representative and appoint her counsel as Class Counsel; (3) approve the Notice Plan; (4) appoint Kurtzman Carlson Consultants as the Claims Administrator, and (5) preliminarily approve the Settlement.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

M3, a debt collector, at all times relevant, between May 12, 2011 and May 26, 2016, was engaged in the collection of healthcare debts allegedly owed by consumers. In this suit, Plaintiff alleges that M3's collection efforts violated the TCPA by calling cellular telephones without "prior express consent," using an "automatic telephone dialing system" and/or using an "artificial or prerecorded voice," and that Plaintiff is entitled to statutory damages. Defendant has denied and continues to deny that it violated the TCPA.

On May 12, 2015, Plaintiff filed this action against M3 (Dkt. No. 1), and M3 answered on July 10, 2015.  (Dkt. No. 18). On August 19, 2015, Plaintiff served her first set of discovery on M3.  Marron Decl., ¶ 3. On September 18, 2015, M3 served its responses to interrogatories. *Id.* On

2

October 14, 2015, the Parties met and conferred via telephone to discuss M3's deficient discovery responses. *Id.* Of importance, M3 informed that its call logs were maintained by its third party dialing vendor (Global Connect) and that Plaintiff would need to subpoena the records directly from Global Connect. *Id.* That same day, Plaintiff's counsel promptly issued a subpoena to Global Connect. *Id.* On October 16, 2015, M3 served its responses to requests for production of documents. *Id.* Thereafter and continuing through January 2016, the Parties continued their meet and confer efforts regarding M3's discovery responses at which time M3 provided supplemental responses. *Id.* Additionally, during that time Plaintiff received call detail reports from Global Connect. *Id.*

Upon receipt of M3's discovery responses and its outbound call logs, Plaintiff retained an expert to review the initial call logs as produced by Global Connect. Marron Decl., ¶ 4. Analysis of the records show that Defendant placed 1,144,782 total calls using Global Connect's platform, which represented 136,218 total unique numbers called and of those unique numbers, 75,439 were assigned to cellphone numbers at the time they were called. *Id.* With this information, the Parties agreed to participate in mediation, which was initially scheduled for August 4, 2016, but rescheduled to November 4, 2016 to allow Defendant (a small business with limited resources) additional time to run final numbers and extract additional data. *Id.* at ¶ 5.

On November 4, 2016, the Parties participated in a full-day mediation with Judge Denlow where a settlement was reached in principle. Marron Decl., ¶ 6. Since then, the Parties worked diligently to finalize a settlement, notice documents, and complete confirmatory discovery.[2]

---

[2]Confirmatory Discovery included Class List (a supplemental production of records from Global Connect for the entire class period and information provided by Defendant to determine the source of the numbers) and changes to Defendant's procedures. Marron Decl., ¶ 7. Beginning on September 27, 2017 and continuing until October 3, 2017, Defendant provided its responses to Plaintiff's confirmatory discovery. *Id.* Review of these supplemental responses, in conjunction with the additional data provided by Global Connect, showed that M3 placed telephone calls to 79,806 unique cellphone numbers during the Class Period. *Id.* With that information, Defendant searched its collection software database to determine which

## III.    THE SETTLEMENT

### A.  **The Definition of the Class ("Settlement Class")**

The "Settlement Class" consists of approximately 19,385 Class Members, whose cellphone numbers are all set forth on the Class List from which Class membership can be ascertained.  The Settlement Class is defied in the Agreement, § 2.28, as follows:

> All persons in the United States who (1) received one or more calls from M3 Financial, (2) that were placed through the Global Connect dialing platform (ATDS and/or pre-recorded voice message), (3) on his or her cellular telephone(s), (4) and that number was not listed in the patient or guarantor field on the account in which the call(s) were placed, (5) from May 12, 2011 through May 26, 2016, and (6) whose telephone numbers are identified in the Class List.[3]

### B.  **Settlement Fund**

M3 has agreed to establish a Settlement Fund totaling $600,000.  (Agreement, §§ 2.31; 5.01.)  The Fund shall be used to pay all costs of the Settlement, including Approved Claims, Notice and Administration expenses, and any attorneys' fees and costs and class representative incentive payments awarded by the Court. (*Id.*) Each Settlement Class Member eligible to receive a share of the Settlement Fund by submitting a claim will receive a *pro rata* share; the amount of each Settlement Class Member's recovery will depend on the number of valid claims that are submitted. There is no minimum or maximum amount that any Settlement Class Member is entitled to receive. (Agreement, § 5.02.) Further, subject to Court approval, an incentive payment will be paid to Plaintiff ($5,000) (Agreement, § 6.02), and the costs of notice and claims administration (estimated to be $51,000 if 5% of the Class submit claims) will be paid from the

---

numbers were related to patients, guarantors, or their equivalents and excluded those numbers from the Settlement as called for by its definition.  *Id.*  That left 19,385 unique cellphone numbers of persons who were not identified as being the debtor or guarantor on the account on which the calls were being placed. *Id.*  Thus, the Parties, through discovery and confirmatory discovery, have identified 19,385 unique numbers which make up the Settlement Class and Class List.

[3] Excluded from the Settlement Class are M3 Financial, its parent companies, affiliates or subsidiaries, or any entities in which such companies have a controlling interest; and any employees thereof; the judge or magistrate judge to whom the Action is assigned and any member of those judges' staffs and immediate families, and any persons who timely and validly request exclusion from the Settlement Class.

Settlement Fund. (Agreement, § 8.03.) That number could change depending on unforeseen circumstances that may occur. In addition, Plaintiff's counsel will seek attorneys' fees in an amount of the Seventh Circuit benchmark of 30%, $180,000, to be paid from the Settlement Fund, plus their final amount of litigation costs incurred, likely not to exceed $40,000. (Agreement, § 6.01.) The uncashed check funds will be paid to the *cy pres* recipient – the Chicago Bar Foundation and will be earmarked for use for consumer protection as it relates to debt collection and/or telephone calls, subject to Court approval. (Agreement, §§ 8.04(f); 11.02.)

### C. <u>Prospective Relief</u>

M3, still making calls, has agreed to create and implement procedures that are aimed at ensuring that going forward, they do not make autodialed calls without consent. (Agreement, § 5.0.) Specifically, Defendant has agreed (1) to block cellular telephone numbers from being contacted via ATDS's or prerecorded or artificial voice messages and (2) to cease calling via ATDS or with prerecorded messages if any person revoke consent by any reasonable means. (*Id.*)

### D. <u>Monetary Relief</u>

All Settlement Class Members who submit an Approved Claim shall receive a cash payment from the Settlement Fund. (*Id.* §§ 5.02.-.03.) In exchange, Settlement Class Members agree to release, any TCPA claim related to telephone calls made by M3 on their cellular telephones from May 12, 2011 through May 26, 2016 per the Class List. (*Id.* § 16.01.)

### E. <u>Notice to the Class</u>

The Settlement Class consists of two categories of persons: (1) persons who were called by M3 and can be identified through reverse look up means ("the Postcard Notice" group); and (2) cellphone numbers of persons who were called by M3 who cannot be identified through reverse look up means. The Parties have agreed to a notice plan that will provide direct notice of the settlement via U.S. mail to all Settlement Class Members whose addresses are reasonably

identifiable by the Settlement Administrator. (Agreement, § 9.01.) The direct mail Notice (i.e., Postcard Notice), as prepared by the Parties, is attached to the Marron Declaration as Exhibit 2. The Settlement Administrator shall also implement an Online Media Campaign with a minimum of 10 million impressions to provide additional notice of the Settlement. (*Id*. § 9.06.)

The Class List (that includes cellphone numbers and some descriptive language if available) was provided to the Claims Administrator, KCC. (Agreement, §§8.01-8.02, 9.01; *see also* KCC Decl., ¶¶ 9.) KCC used the Class List to obtain each Settlement Class Member's name and last known address where available. (*Id.* § 9.02; *see also* KCC Decl., ¶ 9.) KCC will also handling the mailing and re-mailing of any returned postcard notices. (*Id.* § 9.02; *see also* KCC Decl., ¶¶ 10-13.) So far, a preliminary reverse look up performed by KCC yielded name and address information for 77% of the Class Members (or 14,983 persons). *See* KCC Decl., ¶ 9. For the remaining 23% the Online Media Campaign has been designed to best reach the demographic sought here. Thus, between the Postcard Notice and Online Media Campaign which is intended to drive traffic to the Settlement Website so that the Website Notice may be viewed, sufficient notice reach is anticipated. *See* KCC Decl., ¶¶ 14-15.

Additionally, the Notice Plan calls for the creation of a Settlement Website, which will include notice to Class Members of the Settlement, their rights under the Settlement (including the right to object or to exclude themselves from the Settlement), access to the full Settlement Agreement and other important court documents, and the ability to file a claim online. (*Id.* §§ 9.03-.04.; *see also* KCC Decl., ¶ 16.) The Parties' proposed Long Form Notice is attached to the Marron Declaration as Exhibit 3. KCC will also set up a Toll Free Telephone Number for the purpose of submitting claims and responding to inquiries about the Settlement. (*Id.* § 9.05; *see also* KCC Decl., ¶ 17.)

6

**F. The Claims Process**

Settlement Class Members shall have 90 days from the beginning of the notice period (the mailing of the Postcard Notice) to submit claims. (Agreement, § 2.07.) A claim can be submitted by calling a toll-free number, submitting a claim online at the Settlement Website, or by submitting a completed Claim Form that is downloaded from the Settlement Website and sent to the Claims Administrator by mail or otherwise. (Agreement, §§ 10.01-10.03.) Settlement Class Members can submit only one claim for each of their numbers M3 called, if more than one was called, regardless of the number of times they were called by Defendant. (Agreement, § 10.03.)

Here, it is very simple to file claims. If a person receives a Postcard Notice, that notice will contain in individual Claim ID number. To file a claim, that person need only call KCC's toll-free phone number, or go online to the Settlement Website, and enter their Claim ID number in order to submit a claim. *Id.* If any person believes they were called by M3, but are not identified through reverse look up means and therefore did not receive a Postcard Notice, they can easily check with the Claims Administrator to determine if their cell phone number is on the Class List by either submitting their cellphone number(s) (they can submit as many numbers as they believe may have been called during the Class Period, but are limited by technology to six numbers per telephone or online session inquiry) and those numbers submitted are immediately checked electronically. If there is a match, the person can submit a claim immediately. *Id.*

Furthermore, if the same cellphone number on the Class List was called but over the Class Period it was owned by more than one person, i.e., reassigned, and calls were made to both owners of that number during the Class Period, both will be permitted to make a claim. *Id*. But if more than three claims are made for the same number, the Claims Administrator will have in place a mechanism to identify those instances and report such instances to the Parties to determine proper handling in order to prevent fraud. *Id.*

Thus, a person is deemed to have an "Approved Claim" by the Claims Administrator if he or she submits a claim and is either (1) a person who received the Postcard Notice with a Claim Identification number; or (2) a person who did *not* receive Postcard Notice but his or her cell phone number was called by Defendant and the cell phone number is contained on the Class List, i.e., the list of all the numbers called by Defendant during the Class Period. *Id.*

## G. **Opportunity to Opt Out and Object**

Settlement Class Members have the right to opt out or object to the terms of the Settlement. (Agreement, §§ 12.01, 12.02.) The Postcard Notice, Website Notice, and information available via the Toll-Free Number, will inform Settlement Class Members of these rights. *Id.*

## H. **Scope of the Release**

Settlement Class Members release claims against the "Released Parties" related to calls using an "automatic telephone dialing system" or an "artificial or prerecorded voice" used to contact or attempt to contact Class Members. (Agreement, § 16.01 A.)

## IV. **THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS**

In granting preliminary approval, the Court determines whether the proposed Settlement Class satisfies Rule 23(a)'s four requirements (numerosity, commonality, typicality, and adequacy), as well as the requirements of at least one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). Under Rule 23(b)(3), Plaintiff must show that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of resolving the controversy. As detailed below, the proposed Settlement Class comports with Rule 23, and the Court should certify it for settlement purposes.

Ascertainability:  To satisfy the Seventh Circuit's ascertainability test, a proposed class must not be defined vaguely, subjectively, or "in terms of success on the merits." *Id.* The proposed Settlement Class abides. It defines a particular group of cellphone subscribers, harmed with

unsolicited calls from M3, during a specific period, using particular equipment. Nothing in the class definition is based on subjective criteria, instead focusing on a specific set of actions by M3. (*See* Agreement, § 2.28.)

Rule 23 (a)(1) Numerosity: A class satisfies Rule 23(a)(1) if it is "so numerous that joinder of all members is impracticable." Although there is no magic number at which a class becomes sufficiently numerous, courts typically find the requirement met if the class more than 40. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014). Here, the Settlement Class easily exceeds that threshold, as it includes users of 19,385 cellphone numbers during the relevant time period. (Agreement, §§ 2.28, 8.02.)

Rule 23(a)(2) Commonality: Rule 23(a)(2) is satisfied when there are "questions of law or fact common to the class." Class members' claims must share "a common contention . . . capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Because, "even a single common question will do," *Dukes*, 131 S. Ct. at 2556 (internal quotations and alterations omitted), courts regularly find common questions arising from a defendant's use of an automatic dialing system or prerecorded voice to place calls. *See*, *e.g.*, *Birchmeier*, 302 F.R.D. at 251.

Here, the Settlement Class Members' claims arise out of a uniform course of alleged conduct. Settlement Class Members' claims raise shared factual and legal questions, including whether: (i) the dialing system used by M3 constitutes an ATDS within the TCPA's meaning; (ii) the phone calls made featured an artificial or prerecorded voice; (iii) whether M3 can produce evidence that the Settlement Class Members consented to receive the phone calls; (iv) M3's calls violated the TCPA; and (v) M3's conduct was willful, such that treble damages are appropriate.

9

(Dkt. No. 1, ¶ 29, Dkt. No. 4-1.) M3 acted uniformly toward the Settlement Class Members, so the claims can be adjudicated using common evidence. *See Suchanek*, 764 F.3d at 757; *see also Birchmeier*, 302 F.R.D. at 251. Rule 23(a)'s commonality requirement is satisfied.

Rule 23(a)(3) Typicality:  Rule 23(a)(3) is satisfied where the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class." Here, Plaintiff and each Settlement Class Member received phone calls to their cellphones that: (a) were an attempt to collect on a third parties' debt of which they did not owe and did not consent to, (b) were made using M3's dialing system (Global Connect), (c) featured prerecorded voice messages, and (d) were allegedly in violation of the TCPA. Plaintiff's and the Settlement Class Members' claims arise from substantially identical conduct and the Settlement Class more than satisfies Rule 23(a)(3)'s commonality requirement. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 342 (N.D. Ill. 2010) (citation omitted); *see also Birchmeier*, 302 F.R.D. at 251 ("[B]ecause the named plaintiffs received the same type of call as the other class members, their claims are typical of those of the class.").

Rule 23(a)(4) Adequacy: Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Here, Plaintiff's interests are aligned with those of the proposed Settlement Class Members as she received unauthorized phone calls on her cellphone, made using the Global Connect dialing platform, in violation of the TCPA. Plaintiff will therefore fairly and adequately protect the Class's interest, and her pursuit of this case demonstrates as much. (Marron Decl., ¶¶ 8-10, 13, 37-38.) Similarly, proposed Class Counsel are well-respected members of the legal community, with extensive experience litigating class actions of similar size, scope, and complexity to this case. (Marron Decl., ¶¶ 8-10, 13, Exs. 4 & 5.) Accordingly, Plaintiff and her counsel have and will continue to adequately represent the class.

Rule 23(b)(3) Predominance:  Rule 23(b)(3) takes Rule 23(a)'s commonality requirement a step further, mandating that the common questions of law and fact "represent a significant aspect of [the] case." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 815 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citation omitted). Thus, when a class's claims can be proven with common evidence, common issues predominate. *See id.* at 818–19. Any predominance analysis begins with the elements of the underlying causes of action. *Id.* at 815 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)). Here, the nature of the Class' claims generates common factual and legal questions, including whether: (i) M3 used an ATDS or prerecorded voice message to make the calls, (ii) Class Members consented to receive the calls, (iii) M3's conduct violated the TCPA, and (iv) M3's alleged violations were willful or knowing. Thus, because the Settlement Class Members received the same debt collection calls, to their cellphones, and the calls were made with the same Global Connect equipment and in the same manner, common questions predominate as required by Rule 23(b)(3).

Superiority:  A class action is superior because it allows the Court to determine the legality of M3's conduct in a single proceeding, generating a uniform result and allow Settlement Class Members to aggregate their relatively modest claim of at most $500 to $1,500 each. *See* 47 U.S.C. § 227(b)(3)(C). The cost of individually litigating claims against M3—including discovery (both fact and expert), motion practice, and trial—would be prohibitively expensive. *See Birchmeier*, 302 F.R.D. at 255 ("In this case, plaintiffs have alleged that defendants chose to violate the TCPA on a very large scale by targeting a million or more people with inappropriate calls. Individual litigation of the claims of each individual would not be a superior or efficient way to resolve the claims."). Class proceedings will allow for the uniform administration of otherwise cost-prohibitive and duplicative claims, so class proceedings are superior.

11

Rule 23(g)(1)(B) Class Counsel:  The court must also appoint counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Here, proposed Class Counsel's efforts, and the results generated, demonstrate their adequacy as counsel for the proposed Class. Proposed Class Counsel investigated the claims at issue, pursued them diligently through discovery, and ultimately obtained relief that, as detailed below, goes far beyond the traditional settlement in this space. (Marron Decl., ¶¶ 3-10, 13, 39-40, Exs. 4 & 5.) Accordingly, the Court should appoint Ronald A. Marron, Kas L. Gallucci, and Alexis M. Wood of the Law Offices of Ronald A. Marron and Jeffrey M. Salas of Salas Wang LLC as Class Counsel.

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of a class action settlement upon a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T*, 270 F.R.D. at 345 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), a multi-factor test[4] determines whether a proposed settlement is in fact fair, reasonable, and adequate. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby*, 75 F.3d at 1199).[5]Here, each factor supports a finding that the Settlement Agreement is "within the range of possible approval."

---

[4]Courts consider five factors: (1) the strength of plaintiff's case compared to the amount obtained in the settlement; (2) the length, complexity, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. The third factor is not typically assessed at the preliminary approval stage as notice has not yet been administered. *See In re AT&T*, 270 F.R.D. at 349.

[5] The Seventh Circuit has identified several "red flags" that may alert courts to a problematic settlement, including: (1) failure to precisely establish the total class recovery; (2) reversion of un-awarded attorneys' fees to the defendant; (3) overly complicated claim forms; and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723–26 (7th Cir. 2014). Because the Agreement provides for a $600,000, non-reversionary fund, from which class members can obtain cash payments through the completion of a simple and straightforward claim form, none of those red flags exist here.

**A.** <u>**The Amount Recovered Relative to the Strength of the Case Favors Approval.**</u>

The strength of the plaintiff's case can be quantified by examining the "net expected value of continued litigation to the class," *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002), and then "estimat[ing] the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Synfuel Techs., Inc.*, 463 F.3d at 653. Here, the monetary relief to claiming class members is substantial, estimated to be approximately $330 (assuming 5% claims rate), and when viewed in light of the nature of the case (where class members allegedly had no relationship to M3 and where the chances of success on the merits are higher), the Settlement obtained holds its own. *See*, *e.g.*, *Kramer v. Autbytel, Inc.*, No. 10-cv-2722 (N.D. Cal.), Dkt. 148 ($100); *Weinstein v. Airt2me, Inc.*, No. 06-cv-484 (N.D. Ill.), Dkt. 93 ($150); *Satterfield v. Simon & Schuster, Inc.*, No. 06-cv-2893 (N.D. Cal.), Dkt. 132 ($175 per claiming class member). Thus, the recovery compares favorably to other TCPA settlements.

Although Plaintiff believes that she and the Class would likely succeed in proving their claims and recovering the $500 statutory damages available under the TCPA, absent settlement, such a recovery is uncertain, as the success of any of M3's defenses (or ability to pay) would prevent Plaintiff and the Class from obtaining any recovery at all. Recognizing this risk, courts consistently hold that "a settlement is a compromise, and courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to plaintiffs.'" *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F.Supp.3d 781, 790 (N.D. Ill. 2015) (quoting *In re AT&T*, 270 F.R.D. at 347). And "this is especially true when complete victory would most surely bankrupt the prospective judgment debtor." *In re Capital One*, 80 F.Supp.3d at 790. Thus, the settlement provides a meaningful "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347.

**B. The Length, Complexity, and Expense of Further Litigation Favor Approval.**

Preliminary approval is appropriate where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). As noted above, continued litigation would require further discovery and motion practice, which will significantly amplify the cost of litigation. *See In re AT&T*, 789 F.Supp.2d at 964. Because the proposed Settlement offers immediate monetary relief to the class while avoiding the need for extensive ongoing litigation, preliminary approval is appropriate.

**C. The Opinion of Competent Counsel Favors Preliminary Approval.**

Here, proposed Class Counsel are well-situated to evaluate the merits of the settlement. As a result of that experience, and for the reasons set forth herein, Class Counsel believe that the Settlement is fair, reasonable, and adequate, and deserving of preliminary approval. Accordingly, this factor weighs in favor of preliminary approval. *Isby*, 75 F.3d at 1200.

**D. The Stage of Litigation and State of Discovery Favor Preliminary Approval.**

The Parties only began the settlement discussions that ultimately led to mediation and settlement after completing discovery on the outside parameters of the class as proposed in Plaintiff's complaint, and the mediation only took place after M3 reviewed the numbers called to determine which numbers belonged to patients or guarantors and which numbers did not. (Marron Decl., ¶ 9.) Only then did the Parties engage in a full-day mediation that was necessary to even agree on an appropriate settlement framework. (*Id.*) In the time following the mediation, the Parties obtained supplemental call records from Global Connect, engaged an expert to determine which numbers were landlines or cellphones at the time they were called, and then Defendant preformed a review of the cellphone numbers called to determine if they were in non-patient and non-guarantor fields, thus completing confirmatory discovery relating to the identification and

establishment of the Class List. (*Id.*) Because the Parties had more than sufficient information to make knowledgeable decisions throughout the negotiations, the final factor supports a finding that the Settlement is "fair, reasonable, and just."*Synfuel Techs., Inc.*, 463 F.3d at 653.

## VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Due process and Rule 23 require that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). The proposed forms of Notice are attached to the Marron Declaration as Exhibits 2 & 3.To ensure that the Notice satisfies the requirements of due process and Rule 23 in both form and content, the Parties have agreed to a comprehensive notice plan developed in conjunction with professional Settlement Administrator KCC that is straightforward and easy-to-read. (Agreement, §§2.06 & 9 *generally*; *see also* Section III(E).) Because the proposed Notice plan effectuates direct notice to all Settlement Class Members identified via reverse lookup, reaches other potential Settlement Class Members through the Settlement Website and publication notice, and fully apprises the Settlement Class Members of their rights, it comports with the requirements of due process and Rule 23. Consequently, the Court should approve the Parties' proposed notice plan.

## VII. CONCLUSION

Plaintiff respectfully request that the Court grant her motion in its entirety.


Dated: November 7, 2017                                    **SALAS WANG LLC**

                                                           s/ Jeffrey M. Salas
                                                           Jeffrey M. Salas
                                                           73 W. Monroe, Suite 219
                                                           Chicago, IL 60603

15

Tel: 312.803.4963
Fax: 312.244.3151
jsalas@salaswang.com

s/ Ronald A. Marron

Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron (pro hac vice)
*ron@consumersadvocates.com*
Alexis M. Wood (pro hac vice)
*alexis@consumersadvocates.com*
Kas L. Gallucci (pro hac vice)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006

*Attorneys for Plaintiff and the Proposed Class*

16