# EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by Plaintiff Elaine Mason ("Plaintiff"), individually and on behalf of the class of persons she seeks to represent, and by Defendant M3 Financial Services, Inc. ("M3 Financial"). Plaintiff and M3 Financial are referred to collectively in this Agreement as the "Parties."

## RECITALS

1.01. On May 12, 2015, Plaintiff Elaine Mason filed a Complaint in the United States District Court for the Northern District of Illinois, Eastern Division (the "Court") entitled *Elaine Mason, on behalf of herself and all others similarly situated vs. M3 Financial Services, Inc., an Illinois corporation,* which was assigned Case No. 1:15-cv-04194 (the "Action"). The Complaint in the Action alleges that M3 Financial violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by using an automatic telephone dialing system or an artificial or prerecorded voice to call cellular phones without the prior express consent of Plaintiff and the putative class members.

1.02. On July 10, 2015, M3 Financial filed an Answer to the Complaint.

1.03 M3 Financial has denied, and continues to deny, all material allegations of the Complaint. M3 Financial specifically denies that it called either Plaintiff or putative class members without their consent, that it violated the TCPA, or that Plaintiff and putative class members are entitled to any relief from M3 Financial. M3 Financial further contends that the Action would not be amenable to class certification if class certification were sought by Plaintiff and opposed by M3 Financial. Nevertheless, taking into account the uncertainty and risks inherent in any litigation, M3 Financial has concluded that further defense of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to fully and finally settle and terminate the Action in the manner and upon the terms and conditions set forth in this Agreement, subject to Court approval.

1.04. This Agreement resulted from good faith, arm's length settlement negotiations over many months, including a day-long mediation session, before the Hon. Morton Denlow, (Ret.), of JAMS. Prior to that mediation, M3 Financial and its vendor, Global Connect, Inc. provided Plaintiff with extensive information concerning her claims, including data regarding

telephone calls placed to putative class members. The Parties also participated in direct discussions about a possible resolution of this litigation, including numerous telephonic meetings. Certain information provided by M3 Financial is subject to confirmatory discovery by Plaintiff as a condition of this settlement.

 1.05. Based on their investigation and the negotiations described in this Agreement, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this litigation, and the substantial benefits to be received by class members pursuant to this Agreement, that a settlement with M3 Financial on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class Members.

 1.06 Plaintiff's Motion for Preliminary Approval will include a request for leave from the Court to modify the class definition to comport with the definition agreed-upon in the mediation and will mirror the definition set forth in Section 2.28 below. Assuming the Court grants the Motion for Final Approval of the Agreement, the Action will be dismissed with prejudice.

 1.07. The Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. This Agreement is inadmissible as evidence against any party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any party to this Agreement. It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

 1.08. The settlement contemplated by this Agreement is subject to preliminary and final approval by the Court, as set forth herein. This Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

## <u>DEFINITIONS</u>

 2.01 **"Action"** means the Action captioned *Elaine Mason, on behalf of herself and all others similarly situated vs. M3 Financial Services, Inc.,* which was assigned Case No. 1:15-cv-04194.

2.02 **"Agreement"** means this Settlement Agreement and Release.

2.03 **"Approved Claim"** means a claim submitted by a Class Member that is submitted timely and in accordance with the directions required for submitting a claim pursuant to Sections 10.02 and 10.03 of the Agreement.

2.04 "**CAFA Notice"** means the notice required by 28 U.S.C. Section 1715(b).

2.05 **"Claim Form"** means the document on the Settlement Website that can be downloaded by a Class Member if she or he wants to submit a claim by mail.

2.06 **"Claims Administrator"** shall mean Kurtzman Carson Consultants ("KCC").

2.07 **"Claims Deadline"** means 90 days from mailing of the Postcard Notice.

2.08 **"Class Counsel"** means Ronald A. Marron, Alexis M. Wood and Kas L. Gallucci of The Law Offices of Ronald A. Marron and Jeffrey M. Salas of Salas Wang LLC.

2.09 **"Class List"** means the list of cellular phone numbers called using the Global Connect platform and such number was not listed in the patient or guarantor fields on the account in which calls were placed as identified from records maintained by M3 Financial and/or the records of Global Connect. In order to be a Settlement Class Member, the cellular telephone number of the claimant must be on the Class List.

2.10 **"Class Period"** means May 12, 2011 through May 26, 2016, inclusive.

2.11 **"Court"** means the United States District Court for the Northern District of Illinois, and the U.S. District Judge Andrea R. Wood to which the Action is assigned.

2.12 **"Effective Date"** means the first business day after which all of the events and conditions specified in Section 17.01 have been met and have occurred.

2.13 **"Final Approval Hearing"** means the hearing held by the Court to determine whether to finally approve the settlement of this Action as set forth in this Agreement as fair, reasonable and adequate.

2.14 **"Final Approval Order"** means the Court's Order approving the Agreement as fair, reasonable and adequate and entering Final Judgment.

2.15 **"Final Judgment"** means the date when the Judgment has become final as provided in Section 14.01.

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

2.16 **"Funding Date"** means the date, which shall be no later than five (5) business days after the Effective Date, on which M3 Financial shall make the payments of the Settlement Fund due pursuant to Section 8.04.

2.17 "**M3 Financial**" means M3 Financial Services, Inc., including any of its divisions.

2.18 **"Notice"** means the notices to be provided to Class Members as set forth in Section 9, including, without limitation, the Postcard Notice and the Website Notice to be posted on the Settlement Website, as described in Sections 9.01 through 9.07. The forms of the Postcard Notice and the Website Notice will comply with notice requirements of Rule 23 of the Federal Rules of Civil Procedure.

2.19 **"Objection Deadline"** means ten (10) days after the Claims Deadline.

2.20 **"Opt-Out Deadline"** means ten (10) days after the Claims Deadline.

2.21 **"Person"** shall mean, without limitation, any individual and his or her spouse, heirs, successors, representatives, and assigns.

2.22 **"Plaintiffs"** means Elaine Mason and the Settlement Class Members, for purposes of this settlement only.

2.23 **"Postcard Notice"** means the notice of settlement sent in a postcard format summarizing the terms of the settlement and advising Class Members of their options in submitting a claim, excluding themselves, or objecting to the settlement.

2.24 **"Preliminary Approval Order"** means the Court's Order entered in connection with the Preliminary Approval Hearing.

2.25 **"Released Claims"** means those claims released in Section 16.

2.26 **"Released Parties"** means M3 Financial Services, Inc. and its predecessors, successors, assigns, parents, subsidiaries, divisions, departments, vendors, clients, principals, and agents, and any and all past, present, and future officers, directors, employees, stockholders, successors, attorneys, insurers, reinsurers, claim service managers, and subrogees of any of the foregoing, relative to the Released Claims.

2.27 **"Releasing Parties"** means Plaintiffs and their respective present or past estates, heirs, assigns, successors, agents, attorneys, executors, and any other representatives of any of these Persons and entities.

2.28 **"Settlement Class"** refers to the following: All persons in the United States who (1) received one or more calls from M3 Financial, (2) that were placed through the Global Connect dialing platform (ATDS and/or pre-recorded voice message), (3) on his or her cellular telephone(s), (4) and that number was not listed in the patient or guarantor field on the account in which the call(s) were placed, (5) from May 12, 2011 through May 26, 2016, and (6) whose telephone numbers are identified in the Class List.

Excluded from the Settlement Class are M3 Financial, its parent companies, affiliates or subsidiaries, or any entities in which such companies have a controlling interest; and any employees thereof; the judge or magistrate judge to whom the Action is assigned and any member of those judges' staffs and immediate families, and any persons who timely and validly request exclusion from the Settlement Class. There are approximately 19,385 persons in the Settlement Class.

2.29 **"Settlement Class Member"** means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

2.30 **"Settlement Costs"** means all costs incurred in the litigation by the Class and their attorneys, including but not limited to Plaintiff's attorneys' fees, their costs of suit, cost of litigation, cost of notice and claims administration, cost of the Claims Administrator to prepare and transmit CAFA Notice as described in Section 9.07, and all other costs incurred in this Action by or on behalf of the Class.

2.31 **"Settlement Fund"** means the sum of six-hundred thousand dollars ($600,000.00) that M3 Financial agrees to pay to settle this Action in full. The Settlement Fund shall be used for Settlement Costs and all amounts to be paid to Class Members and Class Counsel under this Agreement, including any incentive award to the Class Representative, and any fee award to Class Counsel. Under no circumstances shall M3 Financial be required to pay any amount in excess of the $600,000.00 Settlement Fund to resolve the Action. The Settlement Fund represents the total extent of M3 Financial's monetary obligations under this Agreement. M3 Financial shall not, under any circumstances, be obligated to pay any other additional amounts in connection with this Agreement. The Settlement Fund shall be maintained in an interest bearing account if possible, at a bank chosen by the Claims Administrator which is insured by the Federal Deposit Insurance Corporation and that has total assets of at least five-hundred million

dollars ($500,000,000) and a short-term deposit rating of at least P-1 (Moody's) or A-1 (Standard & Poor's).

2.32 **"Settlement Website"** means the Internet website operated by the Claims Administrator as described in Section 9.04.

2.33 **"TCPA"** means the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, and any regulations or rulings promulgated under it.

2.34 **"Telephone Call"** means any telephone call to a cellular telephone number of a non-patient and/or non-guarantor on an account, which call was placed by M3 Financial using an automatic telephone dialing system or artificial or prerecorded voice.

2.35 **"Website Notice"** means the long-form of Notice describing the terms of this Agreement in a question and answer format, which will be made available on the Settlement Website as described in Section 9.03, informing the Settlement Class Members in detail of their rights and obligations related to this Settlement, and advise them how to file a claim, to exclude themselves from the settlement, or to object.

### BOTH SIDES RECOMMEND APPROVAL OF THE SETTLEMENT

3.01. <u>M3 Financial's Position on the Conditional Certification of Settlement Class</u>. M3 Financial disputes that a class is ascertainable, would be manageable or that common issues predominate over individual ones, and deny that a litigation class properly could be certified on the claims asserted in the Action. However, solely for purposes of avoiding the expense and inconvenience of further litigation, M3 Financial does not oppose and agrees to certification of the Class defined in Section 2.28, for *settlement purposes only*, pursuant to Fed. R. Civ. P. 23(b)(3). Preliminary certification of the Class for settlement purposes shall not be deemed a concession that certification of a litigation class is appropriate, nor would M3 Financial be precluded from challenging class certification in further proceedings in the Action or in any other action if the Settlement is not finalized or finally approved. If the Settlement is not finally approved by the Court for any reason whatsoever, the certification of the Class will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in any proceedings involving M3 Financial. No agreements made by or entered into by M3 Financial in connection with the Agreement may be used by Plaintiff, any Person in the Class or any other Person, to establish

any of the elements of class certification in any litigated certification proceedings, whether in this Action or any other judicial proceeding, or otherwise.

3.02.    Plaintiff's Belief in the Merits of Case.  Plaintiff believes that the claims asserted in the Action have merit and that the evidence developed to date supports those claims.  This Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiff that there is any infirmity in the claims asserted by Plaintiff, or that there is any merit whatsoever to any of the contentions and defenses that M3 Financial has asserted.

3.03.    Plaintiff Recognizes the Benefits of Settlement.  Plaintiff recognizes and acknowledges, however, the expense and amount of time which would be required to continue to pursue the Action against M3 Financial, as well as the uncertainty, risk and difficulties of proof inherent in prosecuting such claims on behalf of the Class.  Plaintiff has concluded that it is desirable that the Action and any Released Claims be fully and finally settled and released as set forth in this Agreement.  Plaintiff and Class Counsel believe that this Agreement confers substantial benefits upon the Class and is in the best interests of individual Class Members.

## CLASS COUNSEL AND CLASS REPRESENTATIVE

4.01.    Class Representative and Class Counsel Appointment.  For settlement purposes, and subject to Court approval, Elaine Mason is appointed as the Class Representative for the Class.  The law firms appointed Class Counsel for the Settlement Class are as follows: Ronald A. Marron, Alexis M. Wood and Kas L. Gallucci of The Law Offices of Ronald A. Marron and Jeffrey M. Salas of Salas Wang LLC.

## SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS

5.01.    Total Payment.  M3 Financial shall pay $600,000.00 to settle the Action and obtain a full release from the Releasing Parties of all Released Claims.  The Settlement Fund established by M3 Financial will be used to pay Approved Claims and any and all Settlement Costs.  Settlement Class Members will be eligible for a cash payment, the amount of which is dependent upon the number of Approved Claims.

5.02.    Amount Paid per Claim. The amount paid per Approved Claim shall be divided among the approved claimants on a *pro rata* basis from the amount remaining in the Settlement Fund after payment of all Settlement Costs from the Settlement Fund.

5.03.    Qualifying for Payment. Class Members shall be entitled to submit a claim if their cellular phone number is on the Class List as a phone number that received a Telephone Call during the Class Period.  Only one claim for each phone number called shall be permitted.

5.04.    Account Changes to Block Automatic Dialing of Cellular Telephone Numbers and Systemically Code Borrower's Consent.  As an additional benefit to all Class Members, M3 Financial has developed significant enhancements to its existing policies and procedures, as necessary, (1) to block cellular telephone numbers from being contacted via an automatic telephone dialing system and/or an artificial or recorded voice, and (2) to require that if any person revokes his or her consent by any reasonable means, that person shall not receive any further calls from M3 Financial on his or her cellular telephone via an automatic telephone dialing system and/or an artificial or prerecorded voice.  These procedures were developed and implemented during the Class Period, at least in part, because of this Action.

## ATTORNEYS' FEES, COSTS, AND PAYMENT TO CLASS REPRESENTATIVES

6.01.    Attorneys' Fees and Costs.  Class Counsel shall move the Court for an award of attorneys' fees and expenses to be paid from the Settlement Fund.  Class Counsel has agreed, with no consideration from M3 Financial, to limit their request to no more than thirty percent (30%) of the Settlement Fund. Payment of any award of attorneys' fees and costs shall be made from the Settlement Fund, and not in addition thereto.  Should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Section shall remain in the Settlement Fund to be distributed to Settlement Class Members with Approved Claims.  Upon appropriate Court order so providing, any attorneys' fees and costs awarded to Class Counsel by the Court shall be paid by the Claims Administrator from the Settlement Fund no later than five (5) business days after the Funding Date.

6.02.    Incentive Award.  The Class Representative shall be paid an incentive award for the time and effort she has personally invested in this Action, upon approval by the Court.  M3

Financial shall not object to such incentive payment to be paid to Plaintiff from the Settlement Fund provided it does not exceed $5,000, subject to Court approval. Within five (5) business days after the Funding Date and after receipt of Plaintiff's completed W-9 forms, the Claims Administrator shall pay to Class Counsel the amount of incentive payment awarded by the Court, and Class Counsel shall disburse such funds to Plaintiff.

6.03    <u>Settlement Independent of Award of Fees, Costs and Incentive Payments</u>.  The payments of attorneys' fees, costs and the incentive payment set forth in Sections 6.01 and 6.02 are subject to and dependent upon the Court's approval of the Agreement as fair, reasonable, adequate, and in the best interests of Settlement Class Members.  However, this Agreement is not dependent upon the Court's approving Plaintiff's requests for such payments or awarding the particular amounts sought by Plaintiff.  In the event the Court declines Plaintiff's requests or awards less than the amounts sought, this Settlement shall continue to be effective and enforceable by the Parties.

## **PRELIMINARY APPROVAL**

7.01.    <u>Order of Preliminary Approval</u>.  As soon as practicable after the execution of this Agreement, Plaintiff shall move the Court for entry of the Preliminary Approval Order.  Pursuant to the motion for preliminary approval, the Plaintiff will request that:

A.    the Court conditionally certify the Settlement Class for settlement purposes only and appoint Class Counsel as counsel for the Settlement Class for settlement purposes only;

B.    the Court preliminarily approve the settlement and this Agreement as fair, adequate, and reasonable, and within the reasonable range of possible final approval;

C.    the Court approve the forms of Notice and find that the notice program set forth herein constitutes the best notice practicable under the circumstances, and satisfies due process and Rule 23 of the Federal Rules of Civil Procedure;

D.    the Court set the date and time for the Final Approval Hearing, which may be continued by the Court from time to time without the necessity of further notice; and,

E.    the Court set the Claims Deadline, the Objection Deadline, and the Opt-Out Deadline.

## ADMINISTRATION AND NOTIFICATION PROCESS

8.01.  Third-Party Claims Administrator.  The Claims Administrator shall be responsible for all matters relating to the administration of this settlement, as set forth herein.  Those responsibilities include, but are not limited to, obtaining addresses for Class Members whose addresses are not provided by M3 Financial (including reverse telephone look up), giving notice, obtaining new addresses for returned mail, setting up and maintaining the settlement website and toll-free telephone number, fielding inquiries about the settlement, processing claims, acting as a liaison between Class Members and the Parties regarding claims information, approving claims, rejecting any claim form where there is evidence of fraud, directing the mailing of settlement payments to Settlement Class Members, maintaining reasonably detailed records of exclusion requests and objections, and any other tasks reasonably required to effectuate the administration of this Agreement.  The Claims Administrator will provide at a minimum bi-monthly updates on the claims status to counsel for all Parties, and will respond to the Parties' questions about the status of the case or other related matters in a timely manner.

8.02.  Class List.  To facilitate the notice and claims administration process, M3 Financial and its counsel will provide to the Claims Administrator and to Class Counsel, in an electronically searchable and readable format, a Class List which includes the cellular telephone numbers for each Telephone Call.  M3 Financial represents for settlement purposes that there are 19,385 Persons in the Settlement Class representing that number of unique cellular phone numbers in the Class List.  Any personal information relating to Settlement Class Members provided to the Claims Administrator or Class Counsel pursuant to this Settlement shall be provided solely for the purpose of providing notice to Class Members and allowing them to recover under this Settlement; shall be kept in strict confidence and subject to the Agreed Confidentiality Order and Agreed Confidentiality Order Regarding Global Connect Subpoena; shall not be disclosed to any third party other than Plaintiff's consultant working with the data; and shall not be used for any other purpose.  If the Claims Administrator obtains any updated contact information from the Settlement Class Members, in the claims process or otherwise, none of that updated contact information shall be provided to M3 Financial but shall be maintained solely by the Claims Administrator.  However, such information may be provided to

Class Counsel if necessary to facilitate communication between the Settlement Class Member or claimant about filing claims or other information to assist the Settlement Class Member or claimant, and to counsel for M3 Financial for the limited purpose of providing additional or supplemental CAFA Notice as described in Section 9.07.

8.03.   Payment of Notice and Claims Administration Costs.  All settlement administration costs, including the Claims Administrator fees, shall be taken directly from the Settlement Fund, once created.  If this Agreement is terminated or fails to become effective as described in Section 17, M3 Financial shall be responsible for payment to the Claims Administrator of any claims administration costs necessarily incurred by the Claims Administrator.

8.04   Distribution of the Settlement Fund.   The Claims Administrator shall distribute the funds in the Settlement Fund in the following order and within the time period set forth with respect to each such payment:

(a)     no later than five (5) business days after the Funding Date, the Claims Administrator shall pay taxes and tax-related expenses, if any, or, at the Claims Administrator's discretion, it shall reserve an amount of the Settlement Fund sufficient to pay taxes and tax-related expenses as described in Section 19;

(b)     no later than five (5) business days after the Funding Date, the Claims Administrator shall pay to the Class Representative any incentive award ordered by the Court, as described in Section 6.02.;

(c)     no later than five (5) business days after the Funding Date, the Claims Administrator shall pay to Class Counsel any award of attorneys' fees, costs, or expenses ordered by the Court, as described in Section 6.01;

(d)     no later than twenty (20) days after the Funding Date, the Claims Administrator shall be paid for any unreimbursed costs of administration;

(e)     no later than thirty (30) days after the Funding Date, the Claims Administrator shall pay the Settlement Awards to Class Members who submitted Approved Claims pursuant to Section 10;

(f)     no later than 210 days after the Funding Date, to the extent

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

administratively feasible, the Claims Administrator shall make a supplemental distribution to Class Members who submitted Approved Claims pursuant to Section 10; and

(g) on the final distribution date, which is the earlier of (i) the date as of which all the checks for Settlement Awards have been cashed; or (ii) 210 days after the date on which the last check for a Settlement Award was issued, the Claims Administrator shall pay any amount remaining in the Settlement Fund account from uncashed settlement checks to *cy pres* recipient – The Chicago Bar Foundation – and will be earmarked for use for consumer protection as it relates to debt collection and/or telephone calls, subject to Court approval.

## NOTICES

9.01.   <u>Mailing of Postcard Notice</u>.  The Claims Administrator shall send the Postcard Notice to each Class Member via first class mail within thirty (30) days after entry of the Preliminary Approval Order, or as soon as practicable thereafter.  If sent after the thirty (30) day period, the ninety (90) day Claims Period shall remain intact.  The Claims Administrator shall use the Class List to obtain each Class Member's name and last known address where available, and shall check each address against the United States Post Office National Change of Address Database before the initial mailing.  The Claims Administrator will do what it believes is necessary to obtain current addresses of the owners of the cellular phone numbers prior to mailing the notice.   If and to the extent deemed necessary by the Claims Administrator, the last known address of Class Members will be subject to confirmation or updating as follows:  (a) the Claims Administrator may conduct a reasonable search to locate an updated address for any Class Member whose Settlement Notice is returned as undeliverable; (b) the Claims Administrator shall update addresses based on any forwarding information received from the United States Post Office; and (c) the Claims Administrator shall update addresses based on information it receives and through any requests received from Class Members.

9.02.   Re-Mailing of Returned Postcard Notices.  Any Postcard Notices that are returned as non-deliverable with a forwarding address or with an updated address shall promptly be re-mailed by the Claims Administrator to such forwarding address.

9.03.   Website Notice.  The Claims Administrator shall post on the website a long form of the Notice in a Question and Answer format which sets forth the details of the settlement, and the rights of Class Members to participate in the Settlement, to exclude themselves, or to object to the settlement.

9.04.   Settlement Website.  Within 30 days of the entry of the Preliminary Approval Order, the Claims Administrator shall maintain and administer a dedicated settlement website containing class information and related documents, along with information necessary to file a claim.  At a minimum, such documents shall include the Settlement Agreement and Exhibits, if any, the Notice, a Question & Answer Form Notice, the Preliminary Approval Order, a downloadable Claim Form which may be printed and mailed to the Claims Administrator, an electronic version of the Claim Form which may be completed and submitted electronically, the operative Complaint, and when filed, the application for attorneys' fees and costs and the Final Approval Order.

9.05.   Toll Free Telephone Number.  Within thirty (30) days after entry of the Preliminary Approval Order, the Claims Administrator shall set up a toll-free telephone number for submitting claims and responding to inquiries about the settlement.  That telephone number shall be maintained until the Claims Deadline.  After that time, and through the date the Final Approval Order is entered, a recording will advise any caller to the toll-free telephone number that the Claims Deadline has passed and the details regarding the settlement may be reviewed on the Settlement Website.

9.06.   Online Media Campaign.  The Settlement Administrator will design and implement a targeted programmatic digital media campaign that will result in a minimum of 10 million impressions. Such ads shall be subject to the agreement of the Parties, which shall not be unreasonably withheld.

9.07.   CAFA Notice.   M3 Financial shall be responsible for timely compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. M3 Financial shall provide proof of

such compliance by filing a confirming declaration with the Court within 10 court days of completion.

## CLAIMS PROCESS

10.01.  Potential Claimants.  Each Settlement Class Member who does not timely and validly request exclusion from the Settlement as required in this Agreement shall be entitled to make a claim.  Each Settlement Class Member shall be entitled to make only one claim per cellular telephone number called, regardless of the number of calls made to that Class Member's cellular phone number(s).

10.02.  How to Make a Claim.  In order to make a claim, a Settlement Class Member must follow one of the following methods:  (a) submit a claim telephonically via the toll-free number; (b) submit a claim online through the Settlement Website; or (c) submit by first-class mail or otherwise the completed Claim Form downloaded from the Settlement Website to the Claims Administrator.  All claims must be submitted by the Claims Deadline as set forth in the Postcard Notice and Website Notice.  Any Claim Form postmarked after the Claims Deadline shall be deemed untimely and an invalid claim.

10.03. How a Claim is Approved.  To submit a claim, Settlement Class Members receiving a Postcard Notice need to provide his or her name, a Claim Identification number assigned to each Postcard Notice, and, if the notice address is incorrect, a current address to which the payment may be sent.  If the claimant's Claim Identification number matches the Claim Identification number assigned by the Claims Administrator, that claim will be approved, subject to the limitation that no more than one claim will be paid for each cellular telephone number belonging to each Settlement Class Member.  The Claims Administrator shall configure the claims process to accept multiple claims submitted under a single cellular telephone number. However, the Claims Administrator shall implement procedures to identify instances in which more than three claims are submitted under the same cellular phone number and report such instances to the Parties to determine proper handling.  M3 Financial may take reasonable steps to verify that the claimant was called at the cellular phone number at issue during the Class Period.

A Settlement Class Member who did not receive a Postcard Notice may also submit a claim by providing in the claim process his or her name, mailing address, and cellular telephone number(s) that she or he believes may have been called by M3 Financial during the Class Period.

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

A Settlement Class Member may submit more than one cellular phone number in connection with a claim until all numbers she or he believes may have been called have been checked against the Class List, limited to no more than six cellular phone numbers in each online or telephone submission session. If the submission is by a Claim Form that is mailed in, all such cellular phone numbers believed to have been called may be included in the Claim Form. The Claims Administrator shall check those submitted cellular phone numbers against the phone numbers in the Class List, immediately and electronically, if possible, at the time of the inquiry. If the claimant's cellular telephone number matches a cellular telephone number in the Class List, that claim will be approved, subject to the limitation that no more than one claim will be paid to the same person for each cellular telephone number called. The provision of any telephone number during the claims process shall not be used as a means to contact said person in an attempt to collect on any alleged debts owed, and is solely being provided to confirm (or deny) claims.

A Settlement Class Member can submit more than one claim only if that Class Member has more than one cellular telephone number on the Class List. No more than one claim per Settlement Class Member will be permitted for each cellular telephone number on the Class List. Except as necessary to resolve issues relating to denied claims pursuant to Section 11.01, or to evaluate requests for exclusion and/or respond to objections, or for the limited purpose of providing additional or supplemental CAFA Notice as described in Section 9.07, the Claims Administrator shall not provide to M3 Financial, its counsel or any of its agents any identifying information, including any updated contact information, obtained from the Settlement Class Members for purposes of facilitating the Class Notice, Settlement Awards, or claims administration.

## CLAIM REVIEW PROCESS

11.01. <u>Review of Approved or Denied Claims</u>. Each Class Member who does not exclude himself or herself from the class and who makes a timely claim shall have their claim reviewed by the Claims Administrator. The Claims Administrator shall review the claims and advise the Parties, at a minimum, on a bi-monthly basis of the claims that are approved and denied. Class Counsel shall be entitled to contest the denial of any claims, first through

conferring with the Claims Administrator, and if they are unable to resolve such issues, they may seek assistance of the Court to resolve the issues at the earliest possible date, and to attempt to have a resolution before any fairness hearing. However, if those issues are unresolved at the time of the fairness hearing, that will not prevent the fairness hearing from going forward, with the issues to be resolved at a later date but within sixty (60) days of the entry of any order regarding the fairness hearing, including any order for final approval of the settlement.

11.02.  Mailing of Settlement Check.  The Claims Administrator shall send Settlement checks to Settlement Class Members who submitted Approved Claims via U.S. mail no later than thirty (30) days after the Funding Date.  If any settlement checks are returned, the Claims Administrator shall attempt to obtain a new mailing address for that Settlement Class Member by taking the steps described in Sections 9.01.  If, after a second mailing, the settlement check is again returned, no further efforts need be taken by the Claims Administrator to resend the check. The Claims Administrator shall advise Class Counsel and counsel for M3 Financial of the names of the claimants whose checks are returned by the postal service as soon as practicable.  Each settlement check will be negotiable for one hundred and eighty (180) days after it is issued.  Any funds not paid out as the result of uncashed settlement checks shall, to the extent administratively feasible, be distributed *pro rata* to Settlement Class Members who submitted Approved Claims via U.S. mail no later than two hundred and ten (210) days after the Funding Date.  Any funds not paid out as the result of uncashed settlement checks after the first and second distribution, to the extent applicable, shall be paid out as a *cy pres* award, to the Chicago Bar Foundation.

## OPT-OUTS AND OBJECTIONS

12.01.  Opting Out of the Settlement.  A Settlement Class Member may request to be excluded from the Settlement Class by sending a complete written request to the Claims Administrator postmarked on or before the Opt-Out Deadline to be excluded from the Settlement Class.  The complete written request shall include the member's name, his or her address, the name of the Action (i.e., *Mason v. M3 Financial Services, Inc.*,), a statement that he or she wishes to be excluded from the Settlement Class, and either: (1) the Claim Identification Number on the Postcard Notice, or (2) the cellular telephone number on which he or she received a Telephone Call.  A request to be excluded that does not include all of the foregoing information, that is sent to an address other than that designated in the Notice, or that is not postmarked within

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

the time specified, shall be invalid, and the Persons serving such a request shall be deemed to remain members of the Settlement Class and shall be bound as Settlement Class Members by this Settlement Agreement, if approved. Any member of the Settlement Class who elects to be excluded shall not: (1) be bound by any orders or the Final Judgment; (2) be entitled to relief under this Settlement Agreement; (3) gain any rights by virtue of this Settlement Agreement; nor (4) be entitled to object to any aspect of this Settlement Agreement. "Mass" or "class" requests for exclusion shall not be allowed. If more than 250 Persons submit valid requests for exclusion, M3 Financial have the option of voiding this Settlement and proceeding with the litigation, as provided in Sections 17.02 to 17.05 below.

12.02. <u>Objections</u>. Any Settlement Class Member who intends to object to the fairness of this settlement must file a written objection with the Court, and provide a copy of the objection to the Claims Administrator, Class Counsel and counsel for M3 Financial no later than the Objection Deadline as set forth below:

A. In the written objection, the Settlement Class Member must state his or her full name, address, the reasons for his or her objection, and to ensure membership in the Settlement Class, either: (1) the Claim Identification Number on the Postcard Notice; or (2) the cellular telephone number(s) on which he or she received a Telephone Call. Any supporting documents, evidence, and citations must also be attached to the Objection.

B. Any Settlement Class Member who objects may appear at the Fairness Hearing, either in person or through an attorney hired at the Settlement Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement. A Settlement Class Member or his or her attorney intending to make an appearance at the Fairness Hearing must: (a) file a notice of appearance with the Court no later than ten (10) days prior to the Fairness Hearing, or as the Court may otherwise direct; and (b) serve a copy of such notice of appearance on all counsel for all Parties. Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Fairness Hearing in accordance with the terms of this Section and as detailed in the Notice, and at the same time provide copies to

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Fairness Hearing, shall be foreclosed from seeking any review of this Agreement by appeal or other means, and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

## FINAL APPROVAL AND JUDGMENT ORDER

13.01.   No later than fourteen (14) calendar days prior to the Final Approval Hearing, the Claims Administrator shall file with the Court and serve on counsel for all Parties a declaration stating that the Notice required by the Agreement has been completed in accordance with the terms of the Preliminary Approval Order.

13.02.   If the Settlement is approved preliminarily by the Court, and all other conditions precedent to the settlement have been satisfied, no later than fourteen (14) calendar days prior to Final Approval Hearing:

    A.    The Parties shall both request, individually or collectively, that the Court enter a Final Approval Order, with Class Counsel filing a memorandum of points and authorities in support of the motion; and,

    B.    Counsel for the Class and M3 Financial may file a memorandum addressing any objections submitted to the Settlement.

13.03.   At the Final Approval Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Agreement should be finally approved as fair, reasonable, and adequate, whether any objections to the Agreement should be overruled, whether the fee award and incentive payments to the Class Representative should be approved, and whether a judgment finally approving the Agreement should be entered.

13.04.   This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Agreement and:

    A.    finds that the Notice provided satisfies the requirements of due process and Fed. R. Civ. P. 23(e)(1);

    B.    finds that Settlement Class Members have been adequately represented by the Class Representative and Class Counsel;

C.  finds that the Settlement Agreement is fair, reasonable and adequate to the Settlement Class, that each Settlement Class Member shall be bound by this Agreement, including the releases in 16.01, and the covenant not to sue in Section 16.02, and that this Settlement Agreement should be and is approved;

D.  dismisses on the merits and with prejudice all claims of the Settlement Class Members asserted against M3 Financial in the Action;

E.  permanently enjoins each and every Settlement Class Member from bringing, joining, prosecuting, or continuing to prosecute any Released Claims against M3 Financial or the Released Parties; and,

F.  retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement.

## **FINAL JUDGMENT**

14.01    The Judgment entered at the Final Approval Hearing approving the Settlement Agreement and determining the fee award and incentive award shall be deemed final one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving this Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award and/or incentive award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

## **CONFIRMATORY DISCOVERY**

15.01.  Subject to the Agreed Confidentiality Order and Agreed Confidentiality Order Regarding Global Connect Subpoena, Class Counsel may conduct discovery to confirm the

accuracy of the information provided to them during the course of the litigation and the Parties' settlement negotiations.  The purpose of that discovery is to confirm (a) the total number of Class Members, *i.e.*, cellular telephone numbers to which M3 Financial placed a call and whose numbers were not listed in the patient or guarantor fields on the account in which calls were placed, with an alleged automatic telephone dialing system ("ATDS") and/or an artificial or pre-recorded voice during the Class Period, as identified in the Class List, (b) how those numbers on the Class List were determined, (c) the process used to determine the cellular telephone numbers on the Class List, (d) M3 Financial's use of the Global Connect dialing platform, and (e) M3 Financial's calling procedures during the Class Period and any changes thereto.  Notwithstanding, M3 Financial reserves its rights to object to any broadening of the scope of such confirmatory discovery or the means by which Class Counsel may obtain such confirmatory discovery.  This discovery is to be used solely for purposes of finalizing this Settlement and, consistent with Section 17 below, may not be used for any other purpose in the event this Agreement is terminated or is otherwise not fully and finally approved by the Court.

## **RELEASE OF CLAIMS**

16.01.  <u>Released Claims</u>.  The Releasing Parties hereby release, resolve, relinquish and discharge each and all of the Released Parties from each of the Released Claims (as defined below).  The Releasing Parties further agree that they will not institute any action or cause of action (in law, in equity or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal or local government agency or with any administrative or advisory body, arising from or reasonably related to the Released Claims.  The release does not apply to Persons who timely opt-out of the Settlement.

A.       "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or

equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of or relate in any way to the Telephone Calls, including but not limited to any claims relative to the Telephone Calls under the TCPA and any relevant regulatory or administrative promulgations, case law, or Federal Communications Commission regulations or orders implementing or interpreting the TCPA. The Parties acknowledge and agree that the Released Claims set forth herein does not release any claims held by the States or other governmental entities or any claims for TCPA violations for any other telephone calls placed by entities other than M3 Financial and its vendor Global Connect.

16.02.  <u>Covenant Not To Sue</u>.  The Releasing Parties agree and covenant not to sue any Released Party with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

## <u>CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION OF AGREEMENT</u>

17.01.  The Effective Date of this Settlement Agreement shall not occur unless and until each and every one of the following events occurs, and shall be the date upon which the last (in time) of the following events occurs:

(a)    This Agreement has been signed by the Parties, Class Counsel and M3 Financials' Counsel;

(b)    The Court has entered an order granting Preliminary Approval of the Agreement;

(c)    The Court has entered an order finally approving the Settlement Agreement, following notice to the Settlement Class and a Final Fairness Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment substantially consistent with this Agreement; and

(d)    The Final Judgment has become Final, as defined above.

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

17.02   If some or all of the conditions specified in Section 17.01 are not met, or in the event that this Settlement Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be cancelled and terminated subject to Section 17.03, unless Class Counsel and M3 Financial's Counsel mutually agree in writing to proceed with this Agreement. Notwithstanding anything herein, the Parties agree that the Court's decision as to the amount of the Fee Award to Class Counsel set forth above or the incentive award to the Class Representatives, regardless of the amounts awarded, shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

17.03   <u>Either Side May Terminate the Agreement</u>.  Plaintiff and M3 Financial shall each have the right to unilaterally terminate this Agreement by providing written notice of her, their or its election to do so ("Termination Notice") to all other Parties hereto within ten (10) calendar days of any of the following occurrences:

a.      the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement Agreement;

b.      an appellate court reverses the Final Approval Order, and the Settlement Agreement is not reinstated without material change by the Court on remand;

c.      any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement Agreement in a way that Plaintiff or M3 Financial reasonably consider material, unless such modification or amendment is accepted in writing by all Parties;

d.      the Effective Date does not occur; or

e.      any other ground for termination provided for elsewhere in this Agreement occurs.

17.04.   <u>Termination if Large Number of Opt–Outs</u>.  If, at the conclusion of Opt-Out Deadline, more than 250 Persons have submitted valid requests for exclusion from the Settlement, M3 Financial shall have, in its sole and absolute discretion, the option to terminate this Agreement within ten (10) calendar days after the Opt-Out Deadline.

17.05.   <u>Revert to Status Quo</u>. If either Plaintiff or M3 Financial terminates this Agreement as provided herein, the Agreement shall be of no force and effect and the Parties'

rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had never been executed, any orders entered by the Court in connection with this Agreement shall be vacated, and this Agreement shall not be used for any purpose whatsoever against any of the Parties. However, any payments made to the Claims Administrator for services rendered to the date of termination shall not be refunded to M3 Financial.

<u>**NO ADMISSION OF LIABILITY**</u>

18.01. M3 Financial denies any liability or wrongdoing of any kind associated with the alleged claims in the operative complaints. M3 Financial has denied and continues to deny each and every material factual allegation and all claims asserted against them in the Action. Nothing herein shall constitute an admission by M3 Financial of wrongdoing or liability, or of the truth of any allegations in the Action. Nothing herein shall constitute an admission by M3 Financial that the Action is properly brought on a class or representative basis, or that classes may be certified in this Action, other than for settlement purposes. To this end, the settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement: (i) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of M3 Financial or of the truth of any of the allegations in the Action; (ii) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of M3 Financial in any civil, criminal or administrative proceeding in any court, arbitration forum, administrative agency or other tribunal; and, (iii) are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification.

18.02. Pursuant to Federal Rules of Evidence Rule 408 and any similar provisions under the laws of other states, neither this Agreement nor any related documents filed or created in connection with this Agreement shall be admissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Agreement.

<u>**TAXES**</u>

19.01. <u>Qualified Settlement Fund</u>. The Parties agree that the account into which the Settlement Fund is deposited is intended to be and will at all times constitute a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B 1

19.02.   <u>Claims Administrator is "Administrator"</u>. For the purpose of §1.468B of the Code and the Treasury regulations thereunder, KCC shall be designated as the "administrator" of the Settlement Fund.  The Claims Administrator shall cause to be timely and properly filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B 2(k)). Such returns on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 13.3

19.03.   <u>Expenses Paid from Fund</u>. Any expenses reasonably incurred by the Claims Administrator in carrying out the duties described in this Agreement, including fees of tax attorneys and/or accountants, shall be paid by the Claims Administrator from the Settlement Fund pursuant to its estimates and invoice for services rendered,  in accordance with Section 8.04.

19.04.   <u>Responsibility for Taxes on Distribution</u>. Any person or entity that receives a distribution from the Settlement Fund pursuant to Section 8.04 shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution.  Such taxes and tax-related expenses shall not be paid from the Settlement Fund.

19.05. <u>M3 Financial is Not Responsible</u>. Plaintiffs and Class Counsel shall fully bear all the tax consequences of any and all benefits received by the Settlement Class Members from M3 Financial in connection with this Agreement.  Plaintiffs acknowledge that M3 Financial and its attorneys provided no tax advice related to this Agreement and that M3 Financial may be required to file certain Form 1099 or other information reports with the United States Internal Revenue Service.  Plaintiffs have been advised to consult with tax counsel of Plaintiffs' own choice to seek legal and tax advice regarding the taxability or non-taxability of consideration provided herein.  In no event shall M3 Financial or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Plaintiffs, Class Counsel or any other person or entity, and the Settlement Fund shall indemnify and hold M3 Financial and the other Released Parties harmless for all such taxes and tax-related expenses (including, without limitation, taxes and tax-related expenses payable by reason of any such indemnification).

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

## MISCELLANEOUS

20.01.  <u>Entire Agreement</u>.  This Agreement and any Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

20.02.  <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of Illinois.

20.03.  <u>Non-Waiver Of Debts/Obligations Owing By Class Members</u>.  The Parties understand and agree that this Settlement Agreement and any terms herein shall not affect in any regard any debt or obligation owed by any Plaintiffs or other Persons to M3 Financial and/or its clients, principals and their related or affiliated entities.  This Settlement Agreement does not operate to waive, extinguish, terminate, reduce or affect any debt or obligation owed by Plaintiff or Class Members, and shall not impair or limit any right or cause of action or right to enforce or otherwise collect any underlying debt or amount owed to M3 Financial and its clients, principals and their related or affiliated entities.

20.04.  <u>Jurisdiction</u>.  The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including the Plaintiff and all Settlement Class members, for purposes of the administration and enforcement of this Agreement.

20.05.  <u>No Construction Against Drafter</u>.  This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any Party based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by that Party.

20.06.  <u>Resolution of Disputes</u>.  The Parties shall cooperate in good faith in the administration of this Settlement.  Any unresolved dispute regarding the administration of this Agreement shall be decided by the Court, or by a mediator upon agreement of the Parties.

20.07.  <u>Counterparts</u>.  This Agreement may be signed in counterparts and the separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.  Signature

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

by digital, facsimile, or in PDF format will constitute sufficient execution of this Agreement. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

20.08.  <u>Time Periods</u>.  The time periods and dates described herein are subject to Court approval and may be modified upon order of the Court or written stipulation of the Parties.

20.09.  <u>Authority</u>.  Each person executing this Settlement Agreement on behalf of any of the Parties hereto represents that such person has the authority to so execute this Agreement.

20.10.  <u>No Oral Modifications</u>.  This Agreement may not be amended, modified, altered or otherwise changed in any manner, except by a writing signed by a duly authorized agent of M3 Financial and Plaintiff, and approved by the Court.

20.11.  <u>Press Releases</u>.  The Parties and their counsel agree they will not issue any press releases concerning this Settlement Agreement or the resolution of the Action.

20.12  <u>Advice of Counsel</u>.  The Parties have relied upon the advice and representation of counsel, selected by them, concerning the claims hereby released. The Parties have read and understand fully this Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

20.13  <u>Effect of Agreement</u>.  Whether the Effective Date occurs or this Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

(a)  is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

(b)  is, may be deemed, or shall be used, offered or received against M3 Financial as, an admission, concession or evidence of any fault,

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c)     is, may be deemed, or shall be used, offered or received against Plaintiffs or the Settlement Class, or each or any of them as an admission, concession or evidence of, the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact alleged by M3 Financial, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(d)     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement. Moreover, if this Settlement Agreement is approved by the Court, any party or any of the Released Parties may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

(e)     is, may be deemed, or shall be construed against Plaintiffs, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(f)     is, may be deemed, or shall be construed as or received in evidence as an

27 of 30

*Elaine Mason. v. M3 Financial Services, Inc.* (N.D. Ill., Case No. 1:15-cv-04194)

admission or concession against Plaintiff and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

20.14 <u>No Waiver</u>.  The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

20.15 <u>Force of Terms</u>.  The breach of one or more provisions of this Agreement by one party shall not be sufficient to void any other terms of this Agreement, which shall remain in force.  However, the non-breaching party shall retain all of his, her or its rights under applicable law to obtain a remedy for such breach.

20.16 <u>Exhibits</u>.  If there are any Exhibits attached to this Settlement Agreement, all of the Exhibits are material and integral parts hereof and are fully incorporated herein by reference. The Parties understand portions of those Exhibits may be modified as deemed necessary by the Parties and the Court, and so long as there is no material change in the terms, the Parties shall not refuse to accept such modifications.

20.17 <u>Amendment</u>.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

20.18 <u>Fees and Costs</u>.  Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action.

20.19 <u>Warranty</u>.  Plaintiffs represent and warrant that they have not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other Person or party and that they are fully entitled to release the same.  M3 Financial warrants that the person signing this Agreement on its behalf has full authority to do so.

20.20. <u>Notices</u>.  Unless otherwise stated herein, any notice required or provided for under this Agreement shall be in writing and may be sent by electronic mail, fax or hand delivery, postage prepaid, as follows:

<u>If to Class Counsel</u>:

Ronald A. Marron
Alexis M. Wood
Kas L. Gallucci
Law Offices of Ronald A. Marron
651 Arroyo Drive
San Diego, CA 92103
Telephone: 619-696-9006
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

Jeffrey M. Salas
Salas Wang LLC
73 West Monroe, Suite 219
Chicago, Illinois 60603

<u>If to counsel for Defendant M3 Financial Services, Inc.</u>

Jason M. Kuzinar
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
55 W. Monroe St., Suite 3800
Chicago, IL 60603
Telephone: 312-704-0550
jason.kuzniar@wilsonelser.com

IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed this 6th day of November, 2017.

Plaintiff Elaine Mason                          Defendant M3 Financial Services, Inc.


*[signature: Elaine Mason]*                     By: _____

Elaine Mason, Plaintiff and Class                   Its Authorized Representative
Representative
                                                [Name] _____


**APPROVED AS TO FORM:**


_____

Ronald A. Marron
Law Offices of Ronald A. Marron
651 Arroyo Drive
San Diego, CA 92103
Telephone: 619-696-9006


_____

Jeffrey M. Salas
Salas Wang LLC
73 West Monroe, Suite 219
Chicago, Illinois 60603

Attorneys for Plaintiff Elaine Mason and the
Settlement Class


_____

Jason M. Kuzinar
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
55 W. Monroe St., Suite 3800
Chicago, IL 60603
Telephone: 312-704-0550

For M3 Financial Services, Inc.

Plaintiff Elaine Mason                    Defendant M3 Financial Services, Inc.

_____          By: _____
Elaine Mason, Plaintiff and Class             Its Authorized Representative
Representative

                                         [Name] _____

**APPROVED AS TO FORM**:

_____
Ronald A. Marron
Law Offices of Ronald A. Marron
651 Arroyo Drive
San Diego, CA 92103
Telephone: 619-696-9006


_____
Jeffrey M. Salas
Salas Wang LLC
73 West Monroe, Suite 219
Chicago, Illinois 60603

Attorneys for Plaintiff Elaine Mason and the
Settlement Class


_____
Jason M. Kuzinar
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
55 W. Monroe St., Suite 3800
Chicago, IL 60603
Telephone: 312-704-0550

For M3 Financial Services, Inc.

Plaintiff Elaine Mason

Defendant M3 Financial Services, Inc.

_____
Elaine Mason, Plaintiff and Class
Representative

By: _____
    Its Authorized Representative

[Name] _____

**APPROVED AS TO FORM**:

_____
Ronald A. Marron
Law Offices of Ronald A. Marron
651 Arroyo Drive
San Diego, CA 92103
Telephone: 619-696-9006

_____
Jeffrey M. Salas
Salas Wang LLC
73 West Monroe, Suite 219
Chicago, Illinois 60603

Attorneys for Plaintiff Elaine Mason and the
Settlement Class

_____
Jason M. Kuzinar
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
55 W. Monroe St., Suite 3800
Chicago, IL 60603
Telephone: 312-704-0550

For M3 Financial Services, Inc.

Plaintiff Elaine Mason

_____
Elaine Mason, Plaintiff and Class
Representative

Defendant M3 Financial Services, Inc.

By: _____
     Its Authorized Representative

[Name] _JACOB MATHEW_____

**APPROVED AS TO FORM**:

_____
Ronald A. Marron
Law Offices of Ronald A. Marron
651 Arroyo Drive
San Diego, CA 92103
Telephone: 619-696-9006

_____
Jeffrey M. Salas
Salas Wang LLC
73 West Monroe, Suite 219
Chicago, Illinois 60603

Attorneys for Plaintiff Elaine Mason and the
Settlement Class

_____
Jason M. Kuzniar
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
55 W. Monroe St., Suite 3800
Chicago, IL 60603
Telephone: 312-704-0550

For M3 Financial Services, Inc.