## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ELAINE MASON, on behalf of herself, and all others similarly situated,<br>     Plaintiff,<br><br>v.<br><br>M3 FINANCIAL SERVICES, INC., an Illinois corporation,<br>     Defendant. | Case No.: 15-cv-4194<br><br><br>Honorable Andrea R. Wood<br><br>Honorable Susan E. Cox, Magistrate Judge |

## PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW SUPPORTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

III.    THE SETTLEMENT ........................................................................................................... 2

    A.    Class Definition ("Settlement Class") ................................................................. 3

    B.    Notice ................................................................................................................... 3

    C.    Settlement Fund and Class Members Payments .................................................. 3

    D.    Prospective Relief ............................................................................................... 4

    E.    The Release .......................................................................................................... 4

IV.    CLASS NOTICE DISSEMINATION COMPORTS WITH DUE PROCESS ................... 4

V.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS .................................... 6

    A.    The Settlement Value and Strengths of Plaintiff's Case Compared to the Risks of Continuing Litigation Supports Final Approval ........................................................ 7

    B.    The Likely Risks, Expenses, Complexity and Likely Duration of Further Litigation Supports Final Approval .............................................................................. 9

    C.    The Experience and Views of Competent Class Counsel Supports Final Approval ..... 10

    D.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Final Approval. ..................................................................................................... 10

    E.    The Presence of Good Faith, Absence of Collusion and the Approval of a Third-Party Mediator Supports Final Approval. ................................................................ 11

    F.    The Reaction of Class Members Supports Final Approval ............................... 12

VI.    CLASS SHOULD BE FINALLY CERTIFIED ............................................................. 12

VII.    CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,

    No. 07 cv 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)....................................................... 7

*Birchmeier v. Caribbean Cruise Line, Inc.*,

    302 F.R.D. 240 (N.D. Ill. 2014)........................................................................................... 13, 15

*Burns v. Elrod*,

    757 F.2d 151 (7th Cir. 1985) ........................................................................................................ 4

*Butler v. Am. Cable & Tel., LLC*,

    2011 WL 2708399 (N.D. Ill. July 12, 2011)............................................................................... 11

*Eisen v. Carlisle & Jacquelin*,

    417 U.S. 156 (1974)...................................................................................................................... 4

*Erica P. John Fund, Inc. v. Halliburton Co.*,

    131 S. Ct. 2179 (2011)............................................................................................................... 14

*Eubank v. Pella Corp.*,

    753 F.3d 718 (7th Cir. 2014) ................................................................................................. 7, 11

*Gehrich v. Chase Bank USA, N.A.*,

    No. 12-cv-5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ....................................................... 8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,

    789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................................. passim

*In re Capital One Telephone Consumer Protection Act Litig.*,

    80 F. Supp. 3d 781 (N.D. Ill. 2015) ....................................................................................... 8, 9

*In re Mexico Money Transfer Litig.*,

    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...................................................................................... 12

*Isby v. Bayh*,

    75 F.3d 1191 (7th Cir. 1996) ....................................................................................................... 6

*Kolinek v. Walgreen Co.*,

    311 F.R.D. 483 (N.D. Ill. 2015)............................................................................................... 7, 8

*Messner v. Northshore Univ. Health Sys.*,

    669 F.3d 802 (7th Cir. 2012) .................................................................................................... 14

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................... 4, 6, 9, 10
*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................................................ 13, 14
*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ............................................................................. 6, 7, 10
*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
  309 F.3d 978 (7th Cir. 2002) ...................................................................................... 6
*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................................... 13
*Wilkins v. HSBC Bank Nevada, N.A.*,
  No. 14-cv-190, 2015 WL 890566 (N.D. Ill. 2015) ................................................... 9

**Statutes**
47 U.S.C. § 227(b)(3)(C). ............................................................................................ 15

**Rules**
Fed. R. Civ. P. 23(a)(1) ............................................................................................... 13
Fed. R. Civ. P. 23(a)(3) ............................................................................................... 14
Fed. R. Civ. P. 23(a)(4) ............................................................................................... 14
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 4

**Other Authorities**
Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain
  Language Guide* at 3 (2010) ...................................................................................... 5

iii

## I.    INTRODUCTION

Plaintiff Elaine Mason ("Plaintiff") and Defendant M3 Financial Services, Inc. ("Defendant" or "M3") seek final approval of a settlement (the "Settlement"). The terms[1] of the Settlement were reached in a day-long mediation with the Honorable Morton Denlow, Ret., as set forth in the Settlement Agreement and Release (hereinafter the "Agreement"). That Agreement is attached as Exhibit 1 to the Declaration of Ronald A. Marron in Support of Preliminary Approval, Dkt. No. 55-2. Plaintiff alleges M3's debt collection efforts violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by using an automatic telephone dialing system ("ATDS") and by using prerecorded voice messages to call consumers cell phones without consent. Following extensive discovery and settlement negotiations, the Parties reached a settlement that provides extraordinary relief to consumers.

M3 has agreed to establish a $600,000 Settlement Fund for the 19,385 Settlement Class Members whose cellphone numbers were called by M3 during the Class Period and were identified on the Class List. Each is entitled to a *pro rata* payment from the Settlement Fund, after the costs of notice and claims administration, attorneys' fees and litigation costs and an incentive payment ("Settlement Costs") is deduced from the Settlement Fund. Based on the number of approved claims, each claimant is expected to receive approximately $360. In addition, M3 has agreed to meaningful prospective relief requiring M3 to block automatic dialing of cellular telephone numbers and use of prerecorded voice messages to cellular telephone numbers and to systemically code debtors' consent.

This Court preliminary approved the Parties' settlement on November 21, 2017 (Dkt. No. 60), and the Court-approved Notice Plan was thereafter put into effect. Direct Notice was

---

[1] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

provided to over 70% of the Settlement Class Members, and an extensive online media campaign provided additional publication notice. Despite the extensive notice, no objections to the Settlement have been received, and no Class Member has opted out of participating in the Settlement. This lack of opposition to the Settlement should come as no surprise. Both the monetary and non-monetary relief offered by the settlement are excellent. The approximate $350 per Settlement Class Member exceeds similar TCPA settlement and provides immediate relief to all class members without the need to continue with lengthy and additional litigation and this risk of an ultimate victory for M3. This is especially true given that debt collection calls – the kind of calls at issue here – are often harder to establish as violations of the TCPA, and often garner lower settlement amounts than TCPA settlements involving other types of calls (i.e. telemarketing calls).

Based on everything before the Court and all facts known to counsel, including the participation by the Class Members, Plaintiff and Defendant believe that the settlement is fair, reasonable and adequate and should be approved. This Court should therefore have no hesitation in approving this Settlement, and the Parties respectfully requests that it do so.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The history of this case is set forth in Plaintiff's Memorandum of Law Supporting Motion for Preliminary Approval, Dkt. No. 55. In short, while pursuing litigation and working through a discovery dispute, the Parties engaged in settlement discussions over a period of time, and the settlement was finally reached with the assistance of the Hon. Morton Delow, Ret. of JAMS.

## III. THE SETTLEMENT

The terms of the Settlement preliminary approved by the Court are set forth in the Parties' Settlement Agreement and are briefly summarized below.

A. **Class Definition ("Settlement Class")**

The "Settlement Class" consists of approximately 19,385 Class Members, whose cellphone numbers are all set forth on the Class List from which Class membership can be ascertained. The Settlement Class is defied in the Agreement, § 2.28, as follows:

> All persons in the United States who (1) received one or more calls from M3 Financial, (2) that were placed through the Global Connect dialing platform (ATDS and/or pre-recorded voice message), (3) on his or her cellular telephone(s), (4) and that number was not listed in the patient or guarantor field on the account in which the call(s) were placed, (5) from May 12, 2011 through May 26, 2016, and (6) whose telephone numbers are identified in the Class List.[2]

B. **Notice**

The Notice Plan included: (1) direct Postcard Notice, (2) an Online Media Campaign, (3) a Settlement Website (*www.m3financialtcpasettlement.com*) which contains electronic versions of the claim form that can be submitted online, important court documents, and answered to frequently asked questions; (4) a Toll-Free Number where Settlement Class Members could request a Claim Form, learn more about the Settlement, and also file a claim, and (5) notice to the U.S. Attorney General and Attorneys General of each state pursuant to 28 U.S.C. § 1715. (Agreement, § 9.)

C. **Settlement Fund and Class Members Payments**

M3 has agreed to establish a non-reversionary Settlement Fund totaling $600,000. (Agreement, §§ 2.31; 5.01.) The Fund shall be used to pay all costs of the Settlement, including Approved Claims, Notice and Administration expenses, and any attorneys' fees and costs and class representative incentive payments awarded by the Court. (*Id.*) Each Settlement Class

---

[2] Excluded from the Settlement Class are M3 Financial, its parent companies, affiliates or subsidiaries, or any entities in which such companies have a controlling interest; and any employees thereof; the judge or magistrate judge to whom the Action is assigned and any member of those judges' staffs and immediate families, and any persons who timely and validly request exclusion from the Settlement Class.

Member eligible to receive a share of the Settlement Fund by submitting a claim will receive a *pro rata* share; the amount of each Settlement Class Member's recovery will depend on the number of valid claims that are submitted. (Agreement, § 5.02.)

### D. <u>Prospective Relief</u>

Settlement Class Members will be entitled to prospective relief to reduce the likelihood that consumer will be subjected to unlawful calls in the future. (Agreement, § 5.0.) Specifically, Defendant has agreed (1) to block cellular telephone numbers from being contacted via ATDS's or prerecorded or artificial voice messages and (2) to cease calling via ATDS or with prerecorded messages if any person revoke consent by any reasonable means. (*Id.*)

### E. <u>The Release</u>

Should the Court grant final approval of the Settlement, M3 will receive a release of the Settlement Class Members' claims related to the making of calls using an "automatic telephone dialing system" or an "artificial or prerecorded voice" used to contact or attempt to contact Class Members. (Agreement, § 16.01 A.)

## IV. CLASS NOTICE DISSEMINATION COMPORTS WITH DUE PROCESS

Prior to granting final approval, the Court must first consider whether the Notice to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to individuals who can be identified by regular mail. *See Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985). The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is

reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* at 3 (2010).

The Notice Plan approved by the Court has been implemented by the Court-approved Settlement Administrator, Kurtzman Carson Consultants, LLC ("KCC"). Those efforts included:

- Direct Mail Notice: Postcard Notice was originally mailed out to the 14,983 addresses for the 19,385 cellphone numbers on the Class List. *See* Declaration of Jacqueline Kimbrough on Behalf of Claims Administrator Regarding the Notice Program, Claims, Opt-Outs and Objections ("KCC Decl."), at ¶ 8. After returns and remails, Postcard Notice was delivered to 14,362 addresses (*id.*), meaning direct Postcard Notice reached approximately 74% of the Settlement Class.
- Online Media Campaign: From December 21, 2017 to January 20, 2018, KCC ran an online media campaign the served a total of 10,066,200 impressions. *Id.* at ¶ 10.
- Settlement Website: A settlement website (*www.m3financialtcpasettlement.com*) containing the claim form, the long form notice, "Frequently Asked Questions," and all relevant documents filed by the Parties with the Court, the Preliminary Approval Order, and Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Payment. *Id.* at ¶ 6. The Website has had 14,762 unique visitors. *Id.*
- Toll-Free Number: On December 21, 2017 the toll-free number (844-660-2216) was opened to the public. Callers were able to listen to pre-recorded information about the Settlement (including answers to frequently asked questions) and were able to file their claims. *Id.* at ¶ 7.
- Notice to the U.S. Attorney General and the State Attorneys Generals of 50 states as required by CAFA. Dkt. No. 62.

The various forms of Class Notice[3] provided detailed information regarding (a) class members' rights, including the manner in which objections and exclusions could be lodged; (b) the case's nature, history and progress; (c) the proposed settlement and reason for the settlement; (d) the settlement's benefits; (e) Class Counsel's requested fees and costs; (f) the Fairness Hearing's date, time and location; and, (g) Class Counsel's contact information. The approximate 5,023 Settlement Members who did not receive Postcard Notice received notice by the notice posted on the Settlement Website and through the Online Media Campaign. *See* KCC Decl. at ¶¶ 6, 10-12.

---

[3] In combining Direct Notice with the Online Media Campaign, the total reach of notice is 74.9%. *See* KCC Decl. at ¶ 11.

Both allowed anyone searching for the Settlement on the internet to easily find the Settlement Website and thus file a claim. In this case, because the Settlement Class was a complete reverse look up, meaning that the names and addresses of the Class Members were unknown, the amount of Class Members reached by the notice is sufficient. Thus, Rule 23's notice requirements and due process have been satisfied.

## V.     THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

Federal Rule of Civil Procedure 23(e) mandates that "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval . . . after a hearing and finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). "Federal courts naturally favor the settlement of class action litigation." *Schulte*, 805 F. Supp. 2d at 678 (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). Given this predisposition toward settlement, the Court's approval inquiry "is limited to [consideration of] whether the proposed settlement is lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 986 (7th Cir. 2002).

The Seventh Circuit has identified five factors for district courts to consider in determining whether to approve a class action settlement: (i) the strength of a plaintiff's case compared to the amount of the defendant's settlement offer; (ii) an assessment of the likely complexity, length and expense of the litigation; (iii) an evaluation of the amount of opposition to the settlement among affected parties; (iv) the opinion of competent counsel; and (v) the stage of the proceedings and amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citation and internal quotations omitted); accord *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig*., 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) ("*In re AT&T II*"). Additionally, courts in the Seventh Circuit should also consider whether the settlement is the product of collusion, or whether there are any "red flags" present in the settlement that would suggest it is unfair to the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 723–

29 (7th Cir. 2014). As explained below, these factors overwhelmingly weigh in favor of approving the Settlement in this case.

**A. The Settlement Value and Strengths of Plaintiff's Case Compared to the Risks of Continuing Litigation Supports Final Approval**

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiff['s] case on the merits balanced against the amount offered in the settlement." *In re AT&T II*, 789 F. Supp. 2d at 958 (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 cv 2898, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (quoting *Synfuel*, 463 F.3d at 653). "The Seventh Circuit has recognized that valuing hypothetical continued litigation is necessarily speculative and therefore an inexact science," and courts need only "estimate and come to a ballpark valuation" of the class's claims. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (citation and internal quotations omitted). Here, the Settlement which includes monetary and injunctive relief supports approval when compared to similar TCPA class actions and when viewed in light of the risks of protracted litigation.

The monetary relief provided under the Settlement, a $600,000 non-reversionary Settlement Fund, allows claiming Settlement Class Members to receive a *pro rata* share of the cash compensation, after deducting Settlement Costs. This is an outstanding result for Settlement Class Members because the damages are purely statutory in that they have not suffered any out-of-pocket losses or other economic harm. As a result of the simple claims procedure, a substantial number of claims – 859 valid claims were submitted, plus 10 late claims. *See* KCC Decl. at ¶ 15. That resulted in a claims rate of 4.43% (or 4.49% including the late claims). *Id.* Class Counsel,

joined by the Defendant, seek the Court's approval in paying the relatively few late claims that have been submitted. Those persons often had good reasons for the late submissions and if they are paid, such payment would result in a very minimal reduction in payment to the remaining claims, approximately $5 dollars.

Class Counsel estimate that each Settlement Class Member claimant will receive a *pro rata* credit in the approximate amount of $363 (or $359 if the late claims are approved). *See* Gallucci Decl. at ¶ 2. That *pro rata* amount of $363 is a settlement amount greater than obtained in many other TCPA settlements and warrants final approval. *In re Capital One Tel. Consumer Protection Act Litig.,* 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (providing a $34.60 recovery per claiming class member in debt collection case where class members had provided their phone numbers to the defendant); *Gehrich v. Chase Bank USA, N.A.*, No. 12-cv-5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) (approving settlement providing $52.50 per claiming class member in debt collection case); *Kolinek*, 311 F.R.D. at 493–94 (approving settlement where claiming class members received approximately $30 each after receiving prescription refill reminder calls); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv- 05142, Dkt. No. 94 (N.D. Cal. Apr. 2, 2012) (providing a $25 voucher to each class member related to unsolicited marketing text messages promoting the sales of defendants' products). Courts have consistently viewed that amount of relief appropriate in such cases because "a settlement is a compromise, and court need not –and indent should not—'reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re Capital One Tel. Consumer Protection Act Litig.,* 80 F. Supp. 3d at 790 (citations omitted). "This is especially true when complete victory would most surely bankrupt the prospective judgment debtor." *Id.* In addition to monetary relief, the Settlement also provides for substantial injunctive relief.

8

Through Plaintiff is confidential that she ultimately would have prevails has this matter continued in litigation, there were not insignificant obstacles in doing so. In light of those obstacles, the substantial cash relief to the Settlement Class Members, in additional to the injunctive relief, is quite valuable. There were a number of potential issues if the case proceeded on the merits, including individual issues of relating to prior express consent, such as a potential motion for indemnification against the alleged debtor who may have listed Plaintiff as a non-debtor emergency contact, defendant's intended motion for summary judgment, an uncertain motion for class certification, and the possibility of appeals. The Class faced a significant risk that M3 might establish a consent defense. This is not a telemarketing case; these are collection calls and there is a possibility Defendant obtained at least a portion of the cellphone numbers legitimately. *See In re Capital One Tel. Consumer Protection Act Litig.,* 80 F. Supp. 3d at 805 (where the court cited that risk of non-recovery due to consent issues in approving the settlement); *see also Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-cv-190, 2015 WL 890566, at *6 (N.D. Ill. 2015) (risk of FCC reinterpreting the TCPA which is binding on the court).

In short, the monetary and non-monetary relief obtained through this settlement is exceedingly beneficial to class members, and when considered in light of the potential hurdles faced in obtaining recovery through continued litigation, the relief is well-deserving of this Court's approval. Thus, Plaintiff believes it is in the best interests of the Class to accept this substantial monetary benefit and injunctive relief benefit and seek final approval of this settlement. Accordingly, the first factor supports final approval.

**B. The Likely Risks, Expenses, Complexity and Likely Duration of Further Litigation Supports Final Approval**

"Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. If the case proceeded to

9

trial, there would be a need for additional discovery and expert discovery and testimony, which would have driven up the cost of litigation. *See In re AT&T II,* 789 F. Supp. 2d at 964 (noting that "costs associated with discovery in complex class actions can be significant"). Also, significant and contested motion practice would have been necessary regarding discovery, class certification, and summary judgment, and likely would have been accompanied by length appeals. Further, even if Plaintiff was successful at class certification and at summary judgment, the case would have proceeded to an expensive trial. Here, the Settlement avoids uncertainty and provides immediate and guaranteed relief to the Settlement Class. Thus, the second factor supports final approval.

### C.  The Experience and Views of Competent Class Counsel Supports Final Approval

The next factor considered by courts is the opinion of competent counsel regarding the fairness, reasonableness and adequacy of the Settlement. *Synfuel*, 463 F.3d at 653; *see also Schulte*, 805 F. Supp. 2d at 586 ("The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23."). Here, Class Counsel are particulatly experienced in litigating TCPA claims and have a keen understanding of the legal and factual issued involved in this case. *See* Dkt. Nos. 64-2 & 64-3(Class Counsel's resumes). Based upon experience, Class Counsel fully endorse this settlement as fair, adequate and reasonable which weighs heavily in favor of the Court approving the Settlement. Gallucci Decl. at ¶ 7.

### D.  The Stage of the Proceedings and the Amount of Discovery Completed Supports Final Approval.

The Settlement was reached only after Class Counsel's thorough investigation and analysis of the factual and legal issues involved which supports final approval. *Synfuel*, 463 F.3d at 653. It is well settled that the courts and parties may be equipped with sufficient information even when only minimal formal discovery has taken place if they have engaged in other adversarial litigation

activities and informal discovery. *In re AT&T II,* 789 F. Supp. 2d at 966. Here, the Parties participated in both formal and informal discovery (including discovery from third-party Global Connect) to obtain information necessary to participate in mediation with Judge Denlow. Once a settlement was reached, Defendant responded to formal confirmatory discovery about the number of Class Members and injunctive relief, which confirmed that the settlement was fair, reasonable and adequate. As such, the stage of the proceedings and amount of discovery completed also weigh in favor of final approval.

**E. The Presence of Good Faith, Absence of Collusion and the Approval of a Third-Party Mediator Supports Final Approval.**

In determining whether a settlement is fair, courts consider whether the settlement is a product of collusion, and whether there are nay "red flags" that would suggest it is unfair to settling class members. *Eubank*, 753 F.3d at 722-29. These "red flags" include (i) the failure to properly establish the size of the fund and the total class recovery, (ii) the reversion of unawarded attorneys' fees to the defendant, (iii) substantial alterations to existing class definitions, (iv) the use of coupons, rather than case payments, for class compensation, and (v) overly complicated claim forms. *See id.* Here, the Court should not hesitate to grant final approval to the Settlement because the Settlement was not the result of collusion, nor does it raise any of the "red flags."

As detailed above, the Honorable Judge Denlow, Ret. of JAMS facilitated the settlement of this action with a day-long mediation. *See Butler v. Am. Cable & Tel., LLC*, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) (noting that arm's-length negotiations facilitated by a neutral mediator is a factor that supports a finding that the Settlement was fair.) The Settlement is a result of adversarial arms'-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class action cases. *See* Gallucci Decl. at ¶ 7. Additionally, none of the "red flags" are present. Specifically, the Court knows exactly how much money has been

11

recovered ($600,000 non-reversionary Settlement Fund) and how it will be distributed (to the claiming Class Members, who submitted claims via a simple process, on a *pro rata* basis estimated to be approximately $360). *See* Gallucci Decl. at ¶ 2. Thus, the Court should grant final approval of the Settlement.

### F. The Reaction of Class Members Supports Final Approval

Here, the Class's reaction to the settlement has been overwhelmingly positive and weighs strongly in favor of final approval. *See In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020–21 (N.D. Ill. 2000) (finding that a settlement where "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements"); *In re AT&T II*, 789 F. Supp. 2d at 965 (an exclusion or objection rate of 0.01% of class members was "remarkably low" and supported the settlement). KCC diligently implemented the Court-approved Notice Plan, and the objection and exclusion deadlines have passed. Despite the fact that direct notice was provided to approximately 74% of the Class, and Publication Notice was provided to the rest of the Class through an extensive online marketing campaign, not a single person has objected to the Settlement, and not a single person has opted out of participating in the Settlement. *See* KCC Decl. ¶¶ 13-14. There are 859 timely approved claims, and 10 approved late claims. *Id.* at ¶ 15. This shows that the Class Members viewed the Settlement as fair, reasonable and adequate.

## VI. CLASS SHOULD BE FINALLY CERTIFIED

Plaintiff seeks final certification under Rule 23(b)(3). As detailed below, the Settlement Class comports with Rule 23.

Ascertainability: To satisfy the Seventh Circuit's ascertainability test, a class must not be defined vaguely, subjectively, or "in terms of success on the merits." The Settlement Class abides. It defines a particular group of cellphone subscribers, harmed with unsolicited calls from M3,

during a specific period, using particular equipment. Nothing in the class definition is based on subjective criteria, instead focusing on a specific set of actions by M3. (*See* Agreement, § 2.28.)

Rule 23 (a)(1) Numerosity: A class satisfies Rule 23(a)(1) if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Settlement Class easily exceeds that threshold, as it includes users of 19,385 cellular telephones during the relevant time period. (Agreement, §§ 2.28, 8.02.)

Rule 23(a)(2) Commonality: Rule 23(a)(2) is satisfied when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Class members' claims must share "a common contention . . . capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Because, "even a single common question will do," *Dukes*, 131 S. Ct. at 2556 (internal quotations and alterations omitted), courts regularly find common questions arising from a defendant's use of an automatic dialing system or prerecorded voice to place calls. *See*, *e.g.*, *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014).

Here, the Settlement Class Members' claims arise out of a uniform course of alleged conduct. Settlement Class Members' claims raise shared factual and legal questions, including whether: (i) the dialing system used by M3 constitutes an ATDS within the TCPA's meaning; (ii) the phone calls made featured an artificial or prerecorded voice; (iii) whether M3 can produce evidence that the Settlement Class Members consented to receive the phone calls; (iv) M3's calls violated the TCPA; and (v) M3's conduct was willful, such that treble damages are appropriate. (Dkt. No. 1, ¶ 29, Dkt. No. 4-1.) M3 acted uniformly toward the Settlement Class Members, so the

claims can be adjudicated using common evidence. *See Suchanek*, 764 F.3d at 757. Rule 23(a)'s commonality requirement is satisfied.

Rule 23(a)(3) Typicality:  Rule 23(a)(3) is satisfied where the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, Plaintiff and each Settlement Class Member received phone calls to their cellphones that: (a) were an attempt to collect on a debt of which they did not owe and did not consent to, (b) were made using M3's dialing system (Global Connect), (c) featured prerecorded voice messages, and (d) were allegedly in violation of the TCPA. Plaintiff's and the Settlement Class Members' claims arise from substantially identical conduct and the Settlement Class more than satisfies Rule 23(a)(3)'s commonality requirement.

Rule 23(a)(4) Adequacy: Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Plaintiff and Class Counsel have diligently represented the Class.

Rule 23(b)(3) Predominance:  Rule 23(b)(3) takes Rule 23(a)'s commonality requirement a step further, mandating that the common questions of law and fact "represent a significant aspect of [the] case." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 815 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citation omitted). Thus, when a class's claims can be proven with common evidence, common issues predominate. *See id.* at 818–19. Any predominance analysis begins with the elements of the underlying causes of action. *Id.* at 815 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)). Here, the nature of the Class' claims generates common factual and legal questions, including whether: (i) M3 used an ATDS or prerecorded voice to make the calls, (ii) Class Members consented to receive the calls, (iii) M3's conduct violated the TCPA, and (iv) M3's alleged violations were willful or knowing. Thus, because the Settlement Class Members received the same debt collection telephone calls, to their cellphones,

14

and the calls were made with the same Global Connect equipment and in the same manner, common questions predominate as required by Rule 23(b)(3).

       <u>Superiority</u>:  A class action is superior because it allows the Court to determine the legality of M3's conduct in a single proceeding, generating a uniform result and allow Settlement Class Members to aggregate their relatively modest claim of at most $500 to $1,500 each. *See* 47 U.S.C. § 227(b)(3)(C). The cost of individually litigating claims against M3—including discovery (both fact and expert), motion practice, and trial—would be prohibitively expensive. *See Birchmeier*, 302 F.R.D. at 255 ("In this case, plaintiffs have alleged that defendants chose to violate the TCPA on a very large scale by targeting a million or more people with inappropriate calls. Individual litigation of the claims of each individual would not be a superior or efficient way to resolve the claims."). Class proceedings will allow for the uniform administration of otherwise cost-prohibitive and duplicative claims, so class proceedings are superior.

## VII.    CONCLUSION

       For the reasons discussed above, Plaintiff respectfully requests that the Court finally approve the Settlement as fair and reasonable.

Dated: April 26, 2018

**LAW OFFICES OF RONALD A. MARRON**

By: <u>s/ Kas L. Gallucci</u>

Ronald A. Marron (CA Bar No. 175650) (admitted pro hac vice)
*ron@consumersadvocates.com*
Alexis M. Wood (CA Bar No. 270200) (admitted pro hac vice)
*alexis@consumersadvocates.com*
Kas L. Gallucci (CA Bar No. 288709) (admitted pro hac vice)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: 619-696-9006

**SALAS WANG LLC**
Jeffrey M. Salas (6290649)
*jsalas@salaswang.com*
73 W. Monroe, Suite 219
Chicago, Illinois 60603
Telephone: 312-803-4963

*Class Counsel*